UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HONORABLE TIMOTHY C. STANCEU, JUDGE

|  |  |  |
|---|---|---|
| GIORGIO FOODS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | Court No. 03-00286 |
| | ) | |
| L.K. BOWMAN COMPANY, a division of | ) | **<u>NON-CONFIDENTIAL</u>** |
| HANOVER FOODS CORPORATION, | ) | **<u>VERSION</u>** |
| MONTEREY MUSHROOMS, INC., and | ) | |
| MUSHROOM CANNING COMPANY, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| | ) | |

## **PLAINTIFF'S OPPOSITION TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS TO DISMISS**

Michael T. Shor
Sarah Brackney Arni

Arnold & Porter LLP
555 12th Street, N.W.
Washington, DC  20004-1206
(202) 942-5732
Fax: (202) 942-5999
Michael.Shor@aporter.com

Counsel for Plaintiff Giorgio Foods, Inc.

Dated:  March 1, 2013

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ....................................................................................1

STATEMENT OF FACTS ..........................................................................2

    A.     Preserved Mushroom Investigations and Antidumping Orders..................2

    B.     Denial of CDSOA Distributions to Giorgio................................7

STATEMENT OF THE CASE......................................................................8

ARGUMENT .........................................................................................12

I.     STANDARD FOR MOTIONS TO DISMISS......................................................12

    A.     Standard of Review for Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted................................12

    B.     Standard of Review for Motion to Dismiss for Lack of Subject Matter Jurisdiction..............................................................13

II.    UNDER *SKF* AND *CHEZ SIDNEY*, GIORGIO'S AMENDED COMPLAINT STATES A VIABLE AS-APPLIED FIRST AMENDMENT CONSTITUTIONAL CHALLENGE..................................14

    A.     *SKF* Did Not Resolve All Constitutional Issues ........................14

    B.     The First Amendment Prevents the Government from Rewarding or Penalizing Persons Based on the Abstract Expression of a Particular Viewpoint........................................................15

    C.     Under *SKF*, Plaintiff Has Presented a Viable First Amendment Claim ....16

    D.     *Chez Sidney* Confirms that Giorgio Has a Viable First Amendment Claim, and Its Reasoning Is Not Distinguishable ......................22

III.   GIORGIO'S COMPLAINT RAISES A VIABLE AS-APPLIED EQUAL PROTECTION CLAIM..........................................................28

IV.   THE COURT SHOULD NOT DISMISS GIORGIO'S UNJUST ENRICHMENT/RESTITUTION CLAIM ........................................29

CONCLUSION........................................................................................33

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 13

*Ashley Furniture Indus., Inc. v. United States*, 818 F. Supp. 2d 1355 (CIT 2012) ....................... 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................... 13

*Bigelow v. Virginia*, 421 U.S. 809 (1975) .................................................................. 14

*Burson v. Freeman*, 504 U.S. 191 (1992) .................................................................... 16

*Carl v. U.S. Sec'y of Agric.*, 839 F. Supp. 2d 1351 (CIT 2012) ........................................ 12, 13

*Ethan Allen Global, Inc. v. United States*, 816 F. Supp. 2d 1330 (CIT 2012) ............................ 15

*FAG Holding Corp. v. United States*, 744 F. Supp. 2d 1353 (CIT 2010) ................................... 12

*Giorgio Foods, Inc. v. United States*, 31 CIT 1261, 515 F. Supp. 2d 1313 (2007) ...................... 9, 33

*Gonzales v. Carhart*, 550 U.S. 124 (2007) .................................................................. 14

*IMS Health Inc. v. Ayotte*, 550 F.3d 42 (1st Cir. 2008) .................................................... 16

*Johnston v. Ivac Corp.*, 885 F.2d 1574 (Fed. Cir. 1989) .................................................... 27

*Kimberly-Clark Corp. v. Fort Howard Paper Co.*, 772 F.2d 860 (Fed. Cir. 1985) ......................... 27

*Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.*,

    172 F.3d 397 (6th Cir. 1999) ........................................................................ 16

*Legal Services Corp. v. Velazquez,* 531 U.S. 533 (2001) .................................................. 16

*North Hartland, L.L.C. v. United States*, 309 Fed. Appx. 389 (Fed. Cir. 2009) ........................... 13

*Old Republic Ins. Co. v. United States*, 14 CIT 377, 382, 741 F. Supp. 1570 (1990) ................... 32

*Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334 (Fed. Cir. 2006) ..................... 13

*PS Chez Sidney, L.L.C. v. U.S. Int'l Trade Commission*, 684 F.3d 1374 (Fed. Cir. 2012) .... passim

*R.A.V. v. City of St. Paul*, 505 U.S. 377, 382-83 (1992) ............................................... 16

*Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819 (1995) ...................... 15

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ................................................................. 13

*Scott Timber Co. v. United States*, 692 F.3d 1365 (Fed. Cir. 2012) ............................................ 27

*Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105 (1991).. 16

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041 (Fed. Cir. 2012)...................... 29, 33

*SKF USA, Inc. v. U.S. Customs & Border Protection*, 556 F.3d 1337 (Fed. Cir. 2009) ....... passim

*Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653 (2011) ...................................................... 16

*Speiser v. Randall*, 357 U.S. 513 (1958)................................................................... 15

*Thyssenkrupp Mexinox S.A. v. United States*, 616 F. Supp. 2d 1376 (CIT 2009) ...................... 32

*United States v. Playboy Entm't Group*, 529 U.S. 803 (2000) ...................................... 16

*United States v. Stevens*, 130 S. Ct. 1577 (2010)....................................................... 14

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008)............................. 14

*Wilcox v. Sec'y of Health & Human Servs.*, 1996 WL 18458 (Ct. Fed. Cl. 1996)...................... 27

**Statutes**

19 U.S.C. § 1675c ............................................................................................ 1, 7

**BUSINESS PROPRIETARY INFORMATION**
**DELETED**

## INTRODUCTION

This case concerns the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment"), which provided a cash benefit to domestic producers in successful trade remedy proceedings that "indicate support of {an antidumping or countervailing duty} petition by letter or through questionnaire response."[1]  The trade remedy proceedings at issue were 1997 antidumping investigations concerning preserved mushrooms from Chile, China, India, and Indonesia, which were consolidated in a single petition and handled by the U.S. International Trade Commission ("ITC") as a combined investigation.  The ITC issued one questionnaire in each phase of its investigation, covering all four countries.

Plaintiff Giorgio Foods, Inc. ("Giorgio") is the single largest domestic U.S. producer of preserved mushrooms, itself accounting for [                  ] of all U.S. production.  Giorgio has pled that it fully and completely responded to the ITC's preliminary and final phase questionnaires in the preserved mushrooms investigation, "providing all requested factual information."  Second Am. Compl. ("Complaint") ¶ 45, ECF No. 150-1 (public); ECF No. 151 (confidential).  Giorgio also has pled that its questionnaire responses [

                                                                        ]  *Id*. ¶ 47.  *See also id*.

¶¶ 48-51.  Giorgio's Complaint explicitly avers that Giorgio took no action (as distinguished from abstract expression) indicative of opposition, *id*. ¶ 54, and took numerous and substantial actions in support, [

---

[1] The statute, now repealed, originally was codified at 19 U.S.C. § 1675c(d).

BUSINESS PROPRIETARY INFORMATION
DELETED

] *Id.* ¶¶ 29, 32-44.  Nevertheless, the ITC denied Giorgio access to CDSOA benefits solely because it failed to check off the "support" box on the questionnaires' petition support question, *without considering any fact other than this protected speech*.  *See id.* ¶¶ 73-74.

Giorgio raises as-applied First Amendment and Equal Protection Clause challenges to this denial, contending that the ITC's interpretation and application of the CDSOA to Giorgio under the specific facts of Giorgio's case was unconstitutional.  Defendants and Defendant-Intervenors have filed four separate motions to dismiss this case.  Movants seek to resurrect a "speech-plus-action" construction of the CDSOA that is predicated on a misreading of the Federal Circuit's key decision in *SKF USA, Inc. v. U.S. Customs & Border Protection*, 556 F.3d 1337 (Fed. Cir. 2009), and that the Federal Circuit subsequently rejected expressly in *PS Chez Sidney, L.L.C. v. U.S. International Trade Commission*, 684 F.3d 1374 (Fed. Cir. 2012).  In misapprehending *SKF*, and seeking to distinguish and narrow *Chez Sidney* to its particular facts, movants ignore the Federal Circuit's reasoning and set both decisions adrift from their First Amendment underpinnings.  As demonstrated below, Giorgio raises viable constitutional claims because the Constitution does not permit the Government to award or deny a subsidy based exclusively upon the abstract expression of a viewpoint.

## STATEMENT OF FACTS

### A.      Preserved Mushroom Investigations and Antidumping Orders

The facts presented below are derived exclusively from Giorgio's June 7, 2011 Second Amended Complaint.  *See* ECF No.150-1 (public); ECF No. 151 (confidential).  As Giorgio

**BUSINESS PROPRIETARY INFORMATION**
**DELETED**

explains in Sections I.A and I.B below, for purposes of the pending motion to dismiss, these facts

must be accepted as true and construed most favorably to Giorgio.

At all relevant times, Giorgio has been the largest U.S. domestic producer of preserved

mushrooms, accounting for [                    ] of total U.S. production.  Complaint ¶ 9.  Giorgio

and its affiliates employ roughly 2,000 workers engaged in the production, sale, and distribution

of fresh and preserved mushrooms at its facilities in Pennsylvania.  *Id.*

On January 6, 1998, the Coalition for Fair Preserved Mushroom Trade ("the Coalition")

and several individual producers concurrently filed an antidumping petition with the U.S.

Department of Commerce and the ITC alleging dumping of imported preserved mushrooms from

Chile, China, Indonesia, and India.  *Id.* ¶ 26.  Giorgio was not a petitioner.  Giorgio responded

fully to both the preliminary and final phase questionnaires from the ITC.  *Id.* ¶ 45.  Giorgio

provided all factual information requested by the ITC.  *Id.*  In response to one question on each

questionnaire asking whether it supported the petition against each country, Giorgio checked off

boxes indicating that it took no position with respect to Chile, China, and Indonesia, and that it

opposed with respect to India.  *Id.*

Nonetheless, Giorgio took no *actions* (as distinguished from its abstract expression of

viewpoint in response to the petition support question)[2] to oppose the petitions or Petitioners'

trade enforcement efforts at any time in the Commission's investigation.  *Id.* ¶ 54.  "Giorgio did

not testify, present any evidence, or present any brief in opposition to the petition at the

---

[2] Throughout this brief, we use the term "actions" to mean activities other than the abstract
expression of a viewpoint involved in checking off a box in response to the petition support
question.  The latter is expressive activity protected by the First Amendment and subject to strict
scrutiny.  The former is not.

**BUSINESS PROPRIETARY INFORMATION**
**DELETED**

January 27, 1998 preliminary phase Staff Conference, at the Commission's October 15, 1998

final phase public hearing, or otherwise." *Id.*

To the contrary, Giorgio took numerous actions to support the petition, both in its

questionnaire responses and otherwise, [                                        ] *Id.* ¶ 54.  Prior to the

filing of the petition, [



                        ]

        [

]

In contrast to its abstract expression of viewpoint noted above, Giorgio has pled that its

questionnaire responses [

]  *Id.* ¶ 47.  Giorgio's questionnaire responses [

]  *Id. ¶* 29.  For example, the petition claimed that U.S. prices were

declining as a result of low-priced imports.  [

]  *Id.* ¶ 47.  Also, the petition alleged that the domestic industry was losing sales

to low-priced imports.  [

]  *Id.* ¶ 48.  "The petition also alleged that the domestic

industry was suffering lost revenues as it lowered prices to compete with imported preserved

mushrooms.  [

]

*Id.* ¶ 49.  Indeed, Giorgio alleges that [

]  *Id.* ¶ 51.

BUSINESS PROPRIETARY INFORMATION
DELETED

Giorgio also alleges that [



] *Id.*  For example, Giorgio stated in its questionnaire

response [








] *Id.*

[

]

On October 22, 1998 and December 31, 1998, Commerce published its final determinations

in the four preserved mushroom antidumping investigations.  It found dumping in each of the four

countries.[3]  On November 25, 1998, the ITC published its determination that the domestic industry

was materially injured by reason of dumped imports of preserved mushrooms from Chile.[4]  On

February 12, 1999, the ITC published its determination that the domestic industry was materially

---

[3] *Certain Preserved Mushrooms from Chile*, 63 Fed. Reg. 56,613 (Oct. 22, 1998) (final LTFV
determination); *Certain Preserved Mushrooms from China*, 63 Fed. Reg. 72,255 (Dec. 31, 1998)
(final LTFV determination); *Certain Preserved Mushrooms from Indonesia*, 63 Fed. Reg. 72,268
(Dec. 31, 1998) (final LTFV determination); *Certain Preserved Mushrooms from India*, 63 Fed.
Reg. 72,246 (Dec. 31, 1998) (final LTFV determination).

[4] *Certain Preserved Mushrooms from Chile*, Inv. No. 731-TA-776, USITC Pub. No. 3144 (Nov.
1998) (Final).

injured by reason of dumped imports of preserved mushrooms from China, Indonesia, and India.[5]

The ITC explicitly included Giorgio in its definition of the domestic industry found to be injured by

dumped imports.[6]  As a result of the ITC's final affirmative injury determinations and Commerce's

final determinations of dumping, Commerce, on December 2, 1998 and February 19, 1999, entered

separate antidumping orders against imports of preserved mushrooms from China, Chile, Indonesia,

and India.

### B.      Denial of CDSOA Distributions to Giorgio

On October 28, 2000, the CDSOA, originally codified at 19 U.S.C. § 1675c, was signed

into law.  It established a mechanism to distribute antidumping duties to "affected domestic

producers," defined as "(A) any petitioner or interested party in support of the petition with

respect to which an antidumping duty order . .  or countervailing duty order has been entered,

and {which} (B) remains in operation." 19 U.S.C. § 1675c(b)(1).  Under the statute, to qualify

as a party in support of the petition, a domestic producer must "indicate support of the petition by

letter or through questionnaire response."  19 U.S.C. § 1675c(d)(1); *see also Chez Sidney*, 684

F.3d at 1376.  The ITC creates and maintains a list of such eligible persons, and U.S. Customs

and Border Protection ("CBP") utilizes the listing in determining distributions.  19 U.S.C.

§ 1675c(d)(1).

Based solely on Giorgio's responses to the "petition support question" on the preliminary

and final questionnaires, the ITC did not include Giorgio on the list of "persons that indicate

---

[5] *Certain Preserved Mushrooms from China, India, and Indonesia*, Inv. No. 731-TA-776-770, USITC Pub. No. 3159 (Feb. 1999) (Final).

[6] *Certain Preserved Mushrooms from Chile*, Inv. No. 731-TA-776, USITC Pub. No. 3144, at 8 (Nov. 1998) (Final); *Certain Preserved Mushrooms from China, India, and Indonesia*, Inv. No. 731-TA-776-770, USITC Pub. No. 3159, at 5 (Feb. 1999) (Final).

support of the petition by letter or through questionnaire response." The ITC did not consider

the fact that Giorgio had submitted full and complete questionnaire responses. Indeed, the ITC

did not consider the remainder of Giorgio's questionnaire responses at all, nor did it consider any

other action that Giorgio took in support of the antidumping petition. *See* Complaint ¶¶ 71-73.

Giorgio contends that "the Commission made no factual findings concerning actions Giorgio

took to support or oppose the petition." *Id.* ¶ 74.

The ITC's refusal to list Giorgio as an affected domestic producer rendered Giorgio

ineligible to receive distributions under the Byrd Amendment for Fiscal Year 2001 and all

subsequent fiscal years. Complaint ¶¶ 75-76. Giorgio seeks its lawful share of all CDSOA

disbursements under the antidumping orders governing certain preserved mushrooms from Chile,

China, Indonesia, and India, for FY 2001 and all subsequent fiscal years. *Id.* ¶ 109. Giorgio

asserts the ITC's construction of the CDSOA *as applied to Giorgio*, permitting it to base the

distribution of funds solely on Giorgio's response to the "support question," violates the First

Amendment and Equal Protection Clause. *Id.* ¶¶ 89-98. In light of *SKF*, Giorgio dropped its

facial constitutional challenges to the statute. *See* ECF No. 150, Memo. at 5.

## STATEMENT OF THE CASE

Giorgio initiated this action on May 23, 2003. ECF No. 4 (public); ECF No. 5

(confidential). Giorgio challenged the ITC's reliance on Giorgio's abstract expression of

viewpoint in response to a single question, rather than its actions as a whole, to deny Giorgio's

inclusion on the list of affected domestic producers for the preserved mushroom antidumping

orders.

On August 23, 2006, Defendant-Intervenors voluntarily sought to intervene in this case.

ECF No. 39. They asserted that "{e}ach {of them} has an interest relating to the property that is

the subject of this action and are so situated that the disposition of this action may impair their

ability to protect that interest." ECF No. 40 at 2. More specifically, Defendant-Intervenors all

contended that:

> Each proposed intervenor, depending on the outcome of this case,
> will potentially (1) share with plaintiff the right to a CDSOA;
> (2) lose any right to a CDSOA distribution if the provision is found
> to be unconstitutional and not severable; (3) receive a larger share
> of CDSOA distributions if plaintiff's case fails; or (4) be forced to
> return for redistribution some part of previously distributed
> CDSOA funds from past years. That outcome will be decided in
> this proceeding, and proposed intervenors have no other adequate
> means to protect those rights.

*Id.* at 4. By order dated September 13, 2006, the Court granted these interventions over

Giorgio's objection. ECF No. 51.

Following the interventions, Giorgio filed a motion to amend its complaint to, among

other things, bring a restitution/unjust enrichment claim against the Defendant-Intervenors and

another domestic producer that had not intervened. ECF No. 59; ECF No. 59-2. Defendants and

Defendant-Intervenors opposed the addition of the new claim. ECF No. 63; ECF No. 64; ECF

No. 65. On August 21, 2007, the Court granted Giorgio's motion to add a restitution/unjust

enrichment claim against the Defendant-Intervenors, but not the non-intervening producer. The

Court carefully considered and rejected intervenors' arguments that the Court lacked subject

matter jurisdiction over such claim. *See Giorgio Foods, Inc. v. United States*, 31 CIT 1261,

1271, 515 F. Supp. 2d 1313, 1323 (2007).

On February 19, 2009, the Federal Circuit issued its main decision scrutinizing the

constitutionality of the CDSOA. In *SKF USA, Inc. v. U.S. Customs & Border Protection*, 556

F.3d 1337 (Fed. Cir. 2009), the Federal Circuit addressed the factual circumstances of a claimant

that not only had checked off the box indicating it opposed the petition, but also had undertaken

numerous actions in the litigation actively to oppose the petition, including through expert

witness testimony, the filing of briefs, and through other information provided in its

questionnaire response. *Id.* at 1358-59. The Federal Circuit, construing the CDSOA to base the award benefits based on actions, rather than expressive speech, held that the statute was facially constitutional. *Id.* at 1360. The court concluded that a producer who merely supported the petition through speech, but not actions, would not be entitled to distributions. *Id.* at 1353 n.26. At a minimum, to be a supporter, a producer would have to submit a complete questionnaire response or otherwise support the petition to have "actively participated" and thus "supported" the petition for purposes of eligibility for distributions. *Id.* The court then turned to SKF's as-applied challenge and determined that actions SKF had taken actively to oppose the petition overrode any support it had provided by completing the ITC's questionnaires. *Id.* at 1359.

In light of *SKF*'s focus on litigation support actions, on August 30, 2010, Giorgio filed a motion to compel the production of additional documents from the administrative record of the antidumping proceedings to assist it in demonstrating its litigation support actions. ECF No. 95 (public); ECF No. 96 (confidential). Over the opposition of Defendants and Defendant-Intervenors, the Court granted the motion to supplement on January 5, 2011. ECF No. 119.

On April 22, 2011, upon a consent motion filed by Defendant-Intervenors, the Court ordered that the case be bifurcated. The Order dictates that the Court first shall consider whether Giorgio lawfully was denied CDSOA distributions and "that all litigation of all other issues, including remedy issues and Plaintiff's restitution/unjust enrichment claim against Defendant-Intervenors, is deferred unless and until this Court has issued a ruling that such determinations were not lawful." ECF No. 143 at 2. Defendant-Intervenors had argued that Giorgio's claim for restitution/unjust enrichment was "contingent upon a finding that Plaintiff is eligible" for CDSOA distributions, ECF No. 142 at 1, and that "principles of convenience, judicial economy and avoiding unnecessary burdens on the resources of the parties" supported bifurcation and the

deferral of all litigation relating to the unjust enrichment claim. *Id.* at 2. That Order had the effect of staying discovery requests Giorgio had served on Defendant-Intervenors. ECF. No. 143 at 2.

On June 7, 2011, Giorgio moved to amend its complaint and filed its proposed Second Amended Complaint. ECF No. 150. In light of the Federal Circuit's decision in *SKF*, Giorgio sought to drop its facial constitutional challenges, add certain other claims, and explicitly include a request for money damages. On November 17, 2011, the Court granted in part and denied in part Giorgio's motion, permitting Giorgio to drop the facial challenges, denying the request to add statutory and due process claims for failure to state a claim upon which relief could be granted, and finding it unnecessary for Giorgio to add an explicit request for money damages. *Giorgio Foods, Inc. v. United States*, 804 F. Supp. 2d 1315 (CIT 2011).

On July 13, 2012, the Federal Circuit issued a second key decision interpreting the pertinent provisions of the CDSOA. In *PS Chez Sidney, L.L.C. v. U.S. International Trade Commission*, 684 F.3d 1374 (Fed. Cir. 2012), the Federal Circuit addressed the situation of a domestic producer who had fully completed both questionnaires, checking "support" on the preliminary and "take no position" on the final stage response to the petition support question. *Id.* at 1377. Based on this abstract expression of viewpoint alone, claimant Chez Sidney had been denied CDSOA distributions. *Id.* at 1377-78. Chez Sidney had brought both constitutional and statutory challenges to the ITC's interpretation of the CDSOA, but had voluntarily dropped its constitutional claims following *SKF*.

The Federal Circuit reaffirmed the limiting construction that it had applied to the CDSOA in *SKF*, noting that "it was necessary to limit the meaning of the term 'support' so that it would not include the mere abstract expression of support." *Id.* at 1381. Therefore, the court concluded

that the filing of a questionnaire response satisfied the statute's eligibility requirement, and that

the statute could not be construed, consistent with constitutional limitations, to require the filing

of a questionnaire response plus an additional expression of support.  *Id.* at 1380.  The court

determined Chez Sidney to be eligible for CDSOA distributions, holding that "when a U.S.

producer assists investigation by responding to questionnaires but takes no other action probative

of support or opposition, the producer has supported the petition under § 1675c(d) and is eligible

for distributions if it can otherwise make the required certification that it has been injured."  *Id.*

at 1382.

Before the Court are CBP's, ITC's, and Defendant-Intervenors' motions to dismiss

Giorgio's constitutional claims for failure to state a claim upon which relief may be granted, and

CBP's and Defendant-Intervenors' motions to dismiss Plaintiff's restitution/unjust enrichment

claim for lack of subject matter jurisdiction.

## ARGUMENT

## I.  STANDARD FOR MOTIONS TO DISMISS

### A.  Standard of Review for Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

Rule 12(b)(5) of the Rules of the Court of International Trade permits a party to move to

dismiss a claim for failure to state a claim upon which relief can be granted.  In evaluating a

motion to dismiss under Rule 12(b)(5), "the court assumes all factual allegations to be true and

draws all reasonable inferences in the plaintiff's favor."  *Carl v. U.S. Sec'y of Agric.*, 839 F.

Supp. 2d 1351, 1352 (CIT 2012).  Dismissal should only be granted when a complaint fails to

assert "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face."  *FAG Holding Corp. v. United States*, 744 F. Supp. 2d 1353, 1355 (CIT 2010) (internal

quotations omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Disregarding this standard, the ITC contends that a number of the allegations in Giorgio's complaint are not supported by the administrative record in this case. *See* ECF No. 179-2 at 3 n.5. This argument is premature and has no place in a motion to dismiss. For purposes of the present motion to dismiss, as noted, Giorgio's facts as pled must be accepted as true, and Giorgio's Complaint provides the exclusive factual record upon which the Court must base its ruling. *See Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1342 n. 4 (Fed. Cir. 2006). What comprises the administrative record, whether or not such facts are supported by the administrative record, and, indeed, whether or not this constitutional case is limited by an administrative record, are issues the court must address at a later time, upon an appropriate motion.

B.    **Standard of Review for Motion to Dismiss**
      **for Lack of Subject Matter Jurisdiction**

A motion under Rule 12(b)(1) of the Rules of the Court of International Trade challenges the subject matter jurisdiction of this Court. In challenging the Court's subject matter jurisdiction over Giorgio's claim for unjust enrichment against Defendant-Intervenors, movants do not challenge the factual basis for the court's jurisdiction, but raise only legal arguments. "When a Rule 12(b)(1) motion merely challenges the facial sufficiency of the pleadings to establish subject matter jurisdiction, this court takes the allegations in the pleadings as true and construes them in the light most favorable to the complainant." *North Hartland, L.L.C. v. United States*, 309 Fed. Appx. 389, 391 (Fed. Cir. 2009) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Giorgio, as the plaintiff, bears the burden of establishing the subject matter jurisdiction exists. *Carl*, 839 F. Supp. 2d at 1352.

II.   **UNDER *SKF* AND *CHEZ SIDNEY*, GIORGIO'S AMENDED COMPLAINT STATES A VIABLE AS-APPLIED FIRST AMENDMENT CONSTITUTIONAL CHALLENGE**

A.   *SKF* Did Not Resolve All Constitutional Issues

As a threshold matter, although *SKF* resolved *the SKF plaintiff's* as-applied First Amendment and Equal Protection challenges and its facial constitutional challenges to the CDSOA eligibility statute, the Federal Circuit could not and did not resolve all other possible as-applied challenges, as CBP in particular erroneously suggests.  *See* ECF No. 180-1 at 15-16.  Indeed, in light of its case-specific factual scope, a decision on an as-applied challenge to a statute cannot foreclose other as-applied challenges to the same statute by plaintiffs in different factual circumstances.[7]  An as-applied First Amendment challenge only raises the question of whether a statute infringes on the constitutionally protected speech of the specific plaintiff.  *Bigelow v. Virginia*, 421 U.S. 809, 818 (1975).[8]

---

[7] To prevail on an as-applied challenge, a plaintiff need only demonstrate that the statute as-applied to plaintiff's narrow circumstances is unconstitutional.  *Gonzales v. Carhart*, 550 U.S. 124, 167 (2007) (stating that as-applied challenges address "discrete and well-defined instances").  On the other hand, to succeed on a facial challenge, a plaintiff  must broadly demonstrate that there are no circumstances under which application of the statute would be constitutional.  *United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008).  Thus, *SKF* did not resolve the question whether the CDSOA as applied by the ITC to Giorgio, and Giorgio's factual circumstances, infringed Giorgio's constitutionally protected speech.

[8] CBP's assertion that the Federal Circuit determined in *Chez Sidney* that *SKF* foreclosed further constitutional challenges is grossly misleading.  *See* ECF No. 180-1 at 21.  The *Chez Sidney* case was pending before the Federal Circuit when *SKF* was decided.  At that point, CBP sought summary reversal in *Chez Sidney*.  Rather than risk an immediate remand to the CIT, and further delay, Chez Sidney's counsel made a strategic decision voluntarily to limit its Federal Circuit appeal to statutory issues and so advised the court.  *See* Fed. Cir. Docket No. 2008-1526, Entry 43, July 7, 2010, Pl.-Cross Appellant PS Chez Sidney, LLC's Reply Mem. in Supp. of Mot. to Lift Stay at 1-2 ("Chez Sidney agrees to the United States' proposal to limit briefing to non-constitutional issues.").  The Federal Circuit never ruled that the *Chez Sidney* case raised no new constitutional issues beyond those decided in *SKF*, nor has it ever ruled that other constitutional challenges to the CDSOA cannot proceed on appeal.  Indeed, several such cases are pending

Footnote continued on next page

Moreover, as discussed in more detail below, the *SKF* court *did* find potential constitutional problems with the statute, and found it necessary to adopt a limiting construction of the CDSOA to save it from constitutional infirmity.  The court ruled that, because a government subsidy cannot, consistent with the First Amendment, be awarded solely based on the abstract expression of a particular viewpoint, a claimant who simply checked off the "support" box without more could not receive benefits.  556 F.3d at 1353 n.26.  Necessarily then, viable as-applied First Amendment challenges to the CDSOA can still be brought, including most obviously cases by those harmed by distributions to domestic producers that did nothing more than check off the "support" box.  Giorgio's case is directly analogous.  Giorgio alleges that the ITC denied Giorgio CDSOA benefits based on nothing more than the fact that Giorgio did *not* check off the "support" box.

### B. The First Amendment Prevents the Government from Rewarding or Penalizing Persons Based on the Abstract Expression of a Particular Viewpoint

The starting point for addressing the First Amendment issues in this case, and for understanding the underpinnings of the Federal Circuit's reasoning in *SKF* and *Chez Sidney*, is well-established Supreme Court jurisprudence invalidating, under the free speech clause, statutes that reward or penalize the abstract expression of a particular viewpoint.  The Federal Circuit in *SKF* itself referred to this line of cases, citing *Speiser v. Randall,* 357 U.S. 513, 529 (1958), *Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819, 832 (1995), and *Legal*

---

Footnote continued from previous page
currently.  *See, e.g.*, Fed. Cir. Docket No. 2012-1200 (appeal of *Ethan Allen Global, Inc. v. United States*, 816 F. Supp. 2d 1330 (CIT 2012); Fed. Cir. Docket No. 2012-1196 (appeal of *Ashley Furniture Indus., Inc. v. United States*, 818 F. Supp. 2d 1355 (CIT 2012)).  The Federal Circuit *denied* the Government's motions summarily to affirm the CIT's decision in these and other appeals based on *SKF*.

*Services Corp. v. Velazquez,* 531 U.S. 533, 548 (2001), as cases "which held unconstitutional the distribution of a government benefit designed to favor the speech preferred by the government." 556 F.3d at 1351. These cases hold that statutes that involve viewpoint-based discrimination are subject to strict scrutiny.[9]

Indeed, the Supreme Court has recently ruled that all content-based speech restrictions, including restrictions on commercial speech, are subject to "heightened judicial scrutiny" under the First Amendment. *See Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2664 (2011).[10] The Supreme Court further clarified that "the 'distinction between laws burdening and laws banning speech is but a matter of degree' and that the 'Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans.'" *Id.* (quoting *Playboy Entm't*, 529 U.S. at 812); *see also Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115 (1991) (striking down a statute that did not prohibit speech because it "impose{d} a financial burden on speakers because of the content of their speech").

### C.   Under *SKF*, Plaintiff Has Presented a Viable First Amendment Claim

Movants' argument proceeds from the erroneous premise that the *SKF* court abandoned the fundamental principle that the Government cannot condition a benefit on expressive speech when, in fact, the court adopted and applied it. The court rejected the Government's central argument,

---

[9] "Under strict scrutiny review, the government bears the burden of showing that its regulation is 'necessary to serve a compelling state interest' and that it is 'narrowly drawn to achieve that end." *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.*, 172 F.3d 397, 409 (6th Cir. 1999) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382-83 (1992)); *see also United States v. Playboy Entm't Group*, 529 U.S. 803, 813 (2000). This generally is an insurmountable hurdle. As the Supreme Court has noted, "it is the rare case in which . . . a law survives strict scrutiny." *Burson v. Freeman*, 504 U.S. 191, 211 (1992).

[10] In *SKF*, the Court held that speech restrictions relating to "activities of a commercial nature" were subject only to intermediate scrutiny, citing *IMS Health Inc. v. Ayotte*, 550 F.3d 42, 54-55 (1st Cir. 2008). *Sorrell* overruled the First Circuit's decision *Ayotte*.

made in *SKF*, that the CDSOA presented no First Amendment issue at all.  556 F.3d at 1351

(rejecting the Government's argument that the purpose of the CDSOA was to identify those

producers suffering the greatest injury as "simply implausible" in light of the statute's explicit

restrict that only a petitioner or interested party in support may receive distributions, the absence of

any legislative history that the support requirement was designed as a proxy for injury, and the

availability of more direct and accurate measures of measuring injury).  The Court also rejected the

Government's interpretation of the CDSOA precisely to save the statute from facial

unconstitutionality.  *See id.* at 1350.

The Government's position in *SKF* was that it could make an eligibility determination by

looking at a domestic producer's response to the lengthy ITC questionnaire, examine one question

asking whether that producer supports, opposes, or takes no position on the petition, and base its

eligibility determination exclusively on whether or not the producer checked off the "support" box.

The Federal Circuit rejected that position and refused, on First Amendment grounds, to permit the

Government to base its eligibility determination exclusively on SKF's "oppose" answer.

Most importantly, and citing the First Amendment cases identified in Section II.B above,

the court recognized that "the distribution of a government benefit designed to favor the speech

preferred by the government . . . might well render the statute unconstitutional."  *Id.* at 1351.

The court characterized a producer's response to the petition-support question as  "abstract

expression," and held that CDSOA could not constitutionally reward a "mere abstract expression

of support."  *Id.* at 1353.  The court's conclusion bears emphasis:  the First Amendment does not

permit the Government to award a subsidy based exclusively on the expression of a viewpoint.

To avoid that unconstitutional result, the Court posited that the purpose of the Byrd

Amendment was not to reward abstract expression but instead was to reward litigation support

actions, and it ruled that the statute therefore was not subject to strict scrutiny.  *Id.* at 1352.

Construing the statute in light of this purpose, and avoiding application of the strict scrutiny that

would apply to viewpoint-based conditions, the Court adopted a limiting construction of the

statute and ruled that a producer that did nothing more than check off the support box could not

constitutionally be awarded benefits.  "Thus, we construe the Byrd Amendment's language

providing for payments to a 'petitioner or interested party in support of the petition' to only

permit distributions to those who actively supported the petition (i.e., a party that did no more

than submit a bare statement that it was a supporter without answering questionnaires or

otherwise actively participating would not receive distributions)."  *Id.* at 1353 n.26.

   According to the Federal Circuit, the "limiting construction of the statute is necessary to

cabin its scope so that it does not reward a mere abstract expression of support."  *Id.* at 1353.

Because the purpose of the statute could not be construed as rewarding abstract expression of a

favored viewpoint, the statute's language could not be construed to implement an improper

purpose:  "The language of the Byrd Amendment is easily susceptible to a construction that

rewards actions (litigation support) *rather than* the expression of particular views."  *Id.* at 1353

(emphasis added).  The court did not endorse the construction that movants advance here, which

would suggest that the statute rewards actions *in addition to* the expression of particular views.

In fact the court implicitly rejected movants' argument that the CDSOA could be construed to

require a claimant to check off the petition "support" box as a threshold eligibility condition.

   In *SKF*, the Court took the unusual post-oral argument step of requesting the ITC to supply

it with additional, extra-record documents, so that it could examine the *actions* plaintiff SKF USA

had taken in the proceeding (as distinguished from its viewpoint expressive speech in responding to

the petition support question).[11]   There, as here, the ITC had based its eligibility determination

exclusively on the box claimant SKF had checked off in its response to the petition support

question, and the court found the ITC's exclusive focus on "abstract expression" to be

constitutionally wanting.

In addition to checking "oppose" on the petition support question, the court noted that SKF

undertook numerous *actions* actively to oppose the petition, including providing data and fact and

expert testimony to support a lack of material injury determination by the ITC.   556 F.3d at 1359.

Based on these litigation *actions* in opposition to the petition -- and no evidence that SKF had

supported the petition in any way -- the court concluded that SKF could constitutionally be denied

CDSOA benefits.

In sum, the Court rejected SKF's facial challenges to the statute's constitutionality, as well

as SKF's challenge to the statute as applied by the ITC to it.   But the Federal Circuit did not adopt

the Government's construction of the CDSOA, nor did it sanction the ITC's application either of an

exclusive or threshold, expression-based test.   It rejected both tests.

Following *SKF*, the Government therefore changed its position regarding interpretation of

the statute.   Its new interpretation, which it advanced in *Chez Sidney*, and which movants adopt

here, is that, to be eligible for CDSOA benefits, a domestic producer had to *both* (1) check off the

"support" box, *and* (2) take actions (as opposed to abstract expression) in support, such as by

submitting a full and complete questionnaire response.[12]   Movants correctly note that several

---

[11] Fed. Cir. Docket No. 2008-1005, Entry 99, Nov. 11, 2008, "Court's letter to the Intl Trade
Commission requesting documents from the record of the underlying ITC proceedings in 303-
TA-19, 20; and 731-TA-391-399."

[12] *See* ECF No. 179-2 at 14 ("In other words, under *SKF USA*, if a company does not express
support for the petition in its questionnaire responses, that company simply cannot qualify for
Byrd Amendment distributions, whether or not it otherwise submitted briefs or provided

Footnote continued on next page

decisions of this court, all issued prior to the Federal Circuit's 2012 decision in *PS Chez Sidney LLC v. U.S. International Trade Commission*, 684 F.3d 1374 (Fed. Cir. 2012), and which are not yet final due to appeals pending before the Federal Circuit, appear to have endorsed the Government's new "speech-plus-action" position.  *See*, *e.g.*, ECF No. 179-2 at 13 n.8 (listing decisions).

But even reading *SKF* most favorably to movants, the decision cannot be read as permitting the ITC to do that which it did here:  reject Giorgio's eligibility based *exclusively* on its abstract expression in response to the petition support question.  The *SKF* Court firmly rejected the notion that such abstract expression alone could be dispositive.  The *SKF* Court's constitutional analysis compelled it to look beyond the box checkoff and consider SKF's *actions* concerning the petition.  Indeed, if the *SKF* Court had decided that the claimant in that case was rendered ineligible simply because it had failed to check off the "support" box, the Court would have had no reason to request additional documents so that it could extend its factual analysis to examine the *actions* (as distinguished from abstract expression) claimant had taken during the proceeding.

Indeed, the Government's switch from a "speech" test to a "speech-plus-actions" test is a modification of no constitutional materiality.  The new formulation, like the old test, still impermissibly bases eligibility on the abstract expression of views.  Facing two potential claimants, both of whom may have taken identical *actions* in support of a petition, the Government would award benefits to one and not the other if only one checked off the "support" box.  The ITC still

---

Footnote continued from previous page
testimony during the investigation."); ECF No. 180-1 at 13 ("Thus, the Federal Circuit essentially held that a qualifying producer must *both* (1) indicate its support of the petition (by letter or by checking the support box on an ITC questionnaire) *and* (2) demonstrate that its support of the petition is not merely abstract (through active participation)."); ECF No. 181-1 at 3 (joining in ITC's and CBP's arguments); ECF No. 182-1 (adopting ITC's and CBP's arguments).

would be using abstract expression as a dispositive criterion.  Put another way, an unconstitutional condition is not made constitutional by hiding it among other conditions.

Here, Giorgio has pled that it took numerous *actions* to support the petition, but that the ITC failed to consider its actions and failed to make any factual findings concerning considering *actions* it took in support or in opposition to the petition.  Complaint ¶¶ 73-74.  Those factual pleadings standing alone provide Giorgio with a viable as-applied First Amendment claim.  Indeed, far from supporting dismissal for failure to state a claim, the Government's acknowledgment that the ITC examined only the petition support question is sufficient to justify an immediate remand to the ITC for reconsideration.  While one may debate whether or not *SKF* permits the ITC to accord weight to the checkoff question at all, it is beyond doubt that the decision requires the ITC, as a constitutional matter, to consider the claimant's *actions*, and it utterly failed to do so here.

Movants apparently recognize this problem, which they try to finesse by asserting repeatedly that Giorgio "admitted" or "conceded" that it "never supported the petitions."  These factual assertions have no basis in Giorgio's Complaint, upon which the court must base its ruling -- as demonstrated by the fact that movants' assertions are unaccompanied by any citation -- and simply are false.  Throughout its Complaint, Giorgio repeatedly and extensively details the *actions* it took to support the petitions, including through its questionnaire responses as a whole, and through additional litigation support actions.  It has pled that it took no actions (as distinguished from abstract expression) to oppose the petition.  *See generally* Complaint ¶ 54.  The only "admission" that Giorgio has made is that it did not check "support" in response to the petition support question.

The *SKF* decision cannot be read as endorsing a "support"-checkoff- plus-actions-in-support reading of the CDSOA, because those were not the facts before the court.  The problem

with requiring a producer to check-off the "support" box as a threshold eligibility condition is that it conflicts directly with the *SKF* court's core First Amendment analysis.  If, as the Court ruled, claimants cannot be *rewarded* for an abstract expression of viewpoint (checking the "support" box), then it necessarily follows that potential CDSOA claimants cannot be *penalized* solely based upon the claimant's abstract expression of viewpoint (checking the "take no position" or "oppose" box).  The First Amendment issue is exactly the same -- the Government may not base eligibility for a subsidy on the abstract expression of a viewpoint.  And movants cite no case holding that the Government may deny a benefit based exclusively on the abstract expression of a viewpoint.

> ### D.  *Chez Sidney* Confirms that Giorgio Has a Viable First Amendment Claim, and Its Reasoning Is Not Distinguishable

To the extent any ambiguity existed after *SKF* that the government could not constitutionally base eligibility for a CDSOA subsidy *exclusively* on whether or not a producer checked off the "support" box, the Federal Circuit removed all doubt in *PS Chez Sidney LLC v. U.S. International Trade Commission*, 684 F.3d 1374 (Fed. Cir. 2012).  As noted, that case involved a domestic producer that had checked off the "support" box in its preliminary phase questionnaire, but the "take no position" box in the final phase.  The ITC had ruled that its last expressed position governed, and determined the claimant to be ineligible because it had not checked of "support."  The Government argued for the same "speech-in-support-plus-action-in support" construction of the CDSOA that movants advance here -- and lost.

In *Chez Sidney*, as the Federal Circuit noted, "{b}oth the ITC and Customs . . . contend that § 1675c(d) requires not just the submission of letters or responses, but also the inclusion of an affirmative declaration of support for the petition."  *Id.* at 1380.  The Federal Circuit explicitly rejected that argument, concluding that "the statute's plain language does not require that producers

indicate an expression of support *other than through a letter or by filing a response* -- it states that

supporting producers are those who submitted letters or responses." *Id.* (emphasis added).

**Notably, the *Chez Sidney* court could have but did not rely on Chez Sidney's express**

**indication of "support" in its preliminary phase questionnaire response as the statutorily**

**required indication of support**.  The Court instead declared that basing the determination only on

the box checked in response to the petition support question is "unreasonable." *Id.* at 1382.

Building on its First Amendment analysis in *SKF*, the Federal Circuit ruled in *Chez Sidney*

that CDSOA benefits could neither be granted *nor denied* to a claimant solely based on an abstract

expression of viewpoint.  "{W}e have construed the Byrd Amendment not to reward *or penalize*

abstract expression by itself." *Id.* at 1381 (emphasis added).  The court expressly tied its reasoning

to the First Amendment by referencing the limiting construction of the statute it had adopted in *SKF*

to save the statute from a First Amendment problem.  The *Chez Sidney* court stated that the limiting

construction "effectively redefin{ed} {affected domestic producers} from 'interested parties in

support of a petition' to 'interested parties in a petition.'" *Id.* at 1380 (quoting *SKF*, 556 F.3d at

1346).  Such limitation of "support" was "necessary . . . so that it would not include the mere

abstract expression of support." *Id.* at 1381.

*Chez Sidney* thus reiterates that *SKF* requires a CDSOA eligibility analysis that

"concentrat{es} on the activities of supporters," *id.* at 1381, and that SKF was denied distributions

only because its "other actions in opposition to the petition outweighed the assistance it provided by

responding to the questionnaire." *Id.*  **"{I}t is the surrounding circumstances, not abstract**

**statements of support alone, upon which an appropriate support determination depends."** *Id.*

at 1382-83 (emphasis added).  This last point is critical.  The Federal Circuit acknowledged that,

under its construction of the eligibility criterion, "{t}his potentially allowed SKF, which had

responded to questionnaires but also had actively opposed the petition, to qualify for . . . Byrd

Amendment distributions." *Id.* at 3180. "However, SKF's other actions {as distinguished from its

abstract expression} in opposition to the petition outweighed the assistance it provided by

responding to the questionnaire." *Id.* at 1381. The Federal Circuit plainly disagrees that checking

off the box "support" is a threshold eligibility requirement. The Court noted that SKF was

"potentially" eligible even though it checked the petition support box "oppose," rejecting the

argument movants advance here that Giorgio is ineligible because it checked off that same box, or

the "take no position" box.

      Due to core First Amendment principles, the Federal Circuit construed the CDSOA's

petition support requirement as requiring only that a claimant complete and submit an entire

questionnaire, without taking action (as distinguished from protected expressive speech) to oppose

the petition. "We hold that when a U.S. producer assists investigation by responding to

questionnaires but takes no other *action* probative of support or opposition, the producer has

supported the petition under § 1675c(d) and is eligible for distributions if it can otherwise make the

required certification that it has been injured." *Id.* at 1382 (emphasis added).

      Both the Court's reasoning and its holding could not be clearer. Abstract expression by

itself may not be penalized. Checking off the "support" box may not be required as an eligibility

condition. Claimants that check the "oppose" box remain "potentially" eligible, and their

surrounding actions must be examined.

      Because, as Giorgio has pled, the ITC, in Giorgio's case, looked only to whether Giorgio

had checked the support box and failed to consider Giorgio's *actions* in support or opposition to

the petition, Giorgio has a viable as-applied First Amendment claim.

Movants continuing contention that Giorgio's constitutional challenges are foreclosed by *SKF*, asserting that that decision permits the answer to the "petition support question" to be used as a threshold eligibility criterion, with other portions of the questionnaire and litigation support actions considered if, and only if, the support box is checked, simply are meritless. This argument cannot be reconciled with the Court's reasoning in *SKF*, it cannot be reconciled with the *SKF* Court's consideration of facts beyond SKF USA's abstract expression of opposition, *see* 556 F.3d at 1358-59, and the Federal Circuit expressly rejected the same argument in *Chez Sidney*. 684 F.3d at 1382.[13]

Movants attempts to distinguish *Chez Sidney* likewise are unavailing. First, as demonstrated above, Giorgio's as-applied First Amendment claim is supported by the Federal Circuit's decision in *SKF* and by Supreme Court decisions subjecting statutes that discriminate based upon abstract expressions of viewpoint to strict scrutiny. Movants cite no case supporting their view that the Government may deny a benefit exclusively because a claimant has failed to express a favored abstract viewpoint.

Second, even as to the *Chez Sidney* decision, movants arguments fail. We certainly agree that the *Giorgio* case poses facts different than the *Chez Sidney* case (just as it poses different facts than the *SKF* case). Chez Sidney checked off the "support" and "take no position" boxes; Giorgio checked off the "take no position" and "oppose" boxes. But to distinguish the case, movants must establish not simply that there are different facts, but that applying the Federal

---

[13] The ITC cites to this Court's not-yet-final decisions in other Byrd Amendment cases as supporting its motion to dismiss in this case, but those decisions were all issued prior to the Federal Circuit's decision in *Chez Sidney*, which rejected the arguments advanced by Defendants here. *See, e.g.*, ECF No. 179-2 at 11 n.8, 12 n.9, 13 n.10.

Circuit's reasoning to those different facts should lead to a different outcome.  This they cannot do.

CBP tries by contending that "PS Chez Sidney is factually unique," ECF No. 180-1 at 20, because it had once checked off the support box and "was premised on the unusual fact pattern." *Id.* at 21.  But CBP fails to demonstrate how the fact that Chez Sidney once checked off a petition support box was dispositive in the Federal Circuit's analysis, which *rejected* the ITC's exclusive reliance on the petition support question.  As CBP correctly notes, *id.* at 22, the court required consideration of other "surrounding circumstances."  Because those other circumstances were not limited to how Chez Sidney responded to the petition support question alone, the decision cannot support the ITC's action here in limiting its eligibility analysis exclusively to Giorgio's response to the petition support question.  Put another way, the *SKF* and *Chez Sidney* decisions of the Federal Circuit, read harmoniously, establish a constitutionally grounded analytical framework for determining whether the support requirement is met, and it is plain that the ITC did not follow that framework, giving Giorgio a viable cause of action.

The ITC tries a different tack.  It implicitly concedes that the *Chez Sidney* decision undercuts its position here by arguing the Court should not consider the decision.  But its two arguments are easily dismissed.  The ITC first contends that this Court should not rely on *Chez Sidney* because no mandate has yet issued.  ECF No. 179-2 at 15.  The mandate issued on October 17, 2012, the day after the ITC filed its motion.  That argument thus is moot.

The ITC next appears to contend that the *Chez Sidney* decision somehow is in conflict with the *SKF* decision and that *SKF* must be given dispositive weight as the controlling precedent.  *See* ECF 179-2 at 16 n.12.  But there is no "direct conflict" between the two decisions (indeed, the Court in *Chez Sidney* expressly applies and explicates *SKF*).  It is only

movants' misreading of *SKF* that creates any ostensible conflict, and therefore this Court must

reject movants' interpretation.  This Court is obliged to reconcile panel decisions of the Federal

Circuit whenever possible.  *See Kimberly-Clark Corp. v. Fort Howard Paper Co.*, 772 F.2d 860,

863 (Fed. Cir. 1985) ("{S}tatements in opinions must be read harmoniously with prior

precedent, not in isolation."); *Johnston v. Ivac Corp.*, 885 F.2d 1574, 1579 (Fed. Cir. 1989);

*Scott Timber Co. v. United States*, 692 F.3d 1365, 1375 (Fed. Cir. 2012); *see also Wilcox v. Sec'y*

*of Health & Human Servs.*, 1996 WL 18458, at *5 (Ct. Fed. Cl. 1996) ("{I}n interpreting rulings

of law of a superior court, even when such rulings may at first glance appear to be in conflict

with one another, it is incumbent upon a subordinate court to make every effort to reconcile the

apparently conflicting statements.").

     Finally, the analysis and holding of *Chez Sidney* cannot be ignored simply because Chez

Sidney asserted a statutory claim, rather than a constitutional claim, as Defendant-Intervenors

L.K. Bowman and The Mushroom Company suggest.  *See* ECF No. 181-1 at 3.  As demonstrated

above, the Federal Circuit explicitly buttressed its construction of the statute in *Chez Sidney* with

reference to its First Amendment-based limiting construction of the statute in *SKF*.  The Court's

analysis thus indicates that its construction of the CDSOA -- requiring the ITC to examine

whether the claimant submitted a questionnaire and then its *actions* probative of support or

opposition -- was compelled not only by the statute's plain language but also by First

Amendment limitations on how the statute could be construed.  There is thus little practical

difference in this case between a claim that the ITC interpreted the statute incorrectly as a matter

of statutory construction and a claim that the ITC's construction of the statute as applied to

Giorgio was unconstitutional.  Both claims lead to the same construction of the statute.

Moreover, claimant Chez Sidney's strategic waiver of *its* constitutional claims affords this court

no basis for disregarding the Federal Circuit's analysis and holding.  The Federal Circuit in *Chez Sidney* applied and clarified its decision in *SKF* in a manner that was not *dicta*, and its rulings remain binding here.

In sum, the Federal Circuit's analysis and holding in *Chez Sidney*, like its analysis and rulings in *SKF*, precludes the dismissal of Giorgio's First Amendment claim on a motion to dismiss.  The case holds that the CDSOA cannot be construed to reward or penalize mere abstract expression -- how a claimant responds to the petition support question -- and requires the ITC instead to examine the claimant's *actions*.  Giorgio's Complaint sufficiently pleads that the ITC did not consider those actions at all, and hence Giorgio has pled a viable First Amendment claim.

## III.   GIORGIO'S COMPLAINT RAISES A VIABLE AS-APPLIED EQUAL PROTECTION CLAIM

In *SKF*, the Federal Circuit also concluded that, as construed and as-applied to SKF, the CDSOA did not violate the Equal Protection Clause of the Fifth Amendment.  556 F.3d at 1360.  The court rejected SKF's challenge because "the Byrd Amendment is rationally related to the government's legitimate purpose of rewarding parties who promote the government's policy against dumping."  *Id.*  Because the court had already determined that, through its actions, SKF did not support the petition, it did not violate equal protection guarantees to treat SKF differently than producers who had supported the petition through their actions.

Here, however, as pled in its Complaint and as detailed above, Giorgio supported the petition through its actions, both in completing the preliminary and final questionnaires and through other substantial support actions probative of support.  At no time did Giorgio take any actions in opposition to the petition.  Therefore, Giorgio, like petitioners, should be rewarded for "promoting the government's policy against dumping."

Based on the facts as Giorgio has alleged them, there is no rational basis for the distinction the ITC drew between those who checked off the petition "support" box and those who did not.  Such a limited and exclusive test fails to identify those who actively supported trade enforcement efforts, which the Federal Circuit has held to be the purpose of the CDSOA.  Instead, it impermissibly creates classifications based entirely upon the abstract expression of views.  Accordingly, Giorgio's Complaint pleads a viable cause of action for an as-applied Equal Protection challenge to the ITC's determination.

## IV.  THE COURT SHOULD NOT DISMISS GIORGIO'S UNJUST ENRICHMENT/RESTITUTION CLAIM

Lastly, Defendant CBP and Defendant-Intervenors move to dismiss the Fifth Claim of Giorgio's Second Amended Complaint, which asserts a claim for restitution and unjust enrichment against Defendant-Intervenors, on the grounds that this Court lacks subject matter jurisdiction over this claim.  *See* ECF No. 180-1 at 10-11, 23-24; ECF 181-1 at 4-7.  In this claim, Giorgio contends that the CDSOA distributions in past fiscal years of which it was unlawfully deprived were instead distributed to other domestic producers of preserved mushrooms -- the Defendant-Intervenors.  *See* Complaint ¶¶ 107-108.  Movants,  relying on *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041 (Fed. Cir. 2012), contend that this Court lacks subject-matter jurisdiction over this claim.

The motion concerning the restitution/unjust-enrichment claim is not proper at this time under the Court's April 22, 2011 procedural order, and, irrespective, the Court should defer

consideration of the issue raised as per the terms of that order.[14]  As described above, that order

bifurcated the case and dictates that the Court first shall consider whether Giorgio lawfully was

denied CDSOA distributions, and "that *all* litigation of *all other issues*, including remedy issues

and Plaintiff's restitution/unjust enrichment claim against Defendant-Intervenors is deferred

unless and until this Court has issued a ruling that such determinations were not lawful."  ECF

No. 143 at 2 (emphasis supplied).  Because movants' jurisdictional arguments concerning the

unjust enrichment/restitution claim fall squarely within the scope of "all other litigation of all

other issues," they have been deferred until such time as the Court rules that Giorgio was

unlawfully denied CDSOA distributions.

 Considerations of procedural fairness and regularity counsel that the Court should follow

its own orders absent a compelling reason for departure.  Movants here provide no justification

for ignoring or avoiding the bifurcation order.  This is particularly troubling in light of the fact

that intervenors themselves were the proponents of that order.  The order had the effect of

staying outstanding discovery requests by Giorgio to intervenors, including discovery potentially

relevant to jurisdictional facts, and it should also have the parallel effect of precluding

intervenors from moving forward on issues concerning that claim that they would like to raise.

 Moreover, the bifurcation order was justified and compelling reasons remain for

deferring all issues pertaining to the restitution/unjust-enrichment claim.  First, as intervenors

themselves argued in seeking deferral, Giorgio's claim for restitution/unjust enrichment remains

"contingent" upon a finding that Plaintiff is eligible for CDSOA distributions.  If Giorgio loses

---

[14] Should the Court determine that it is appropriate to depart from the April 22, 2011 procedural
Order, Giorgio respectfully requests that a new Order be issued delineating which issues and
discovery involving the restitution/unjust enrichment claim can proceed and affording Giorgio an
opportunity to address the merits of the jurisdictional issue.

on its primary claims, the parties and the Court will have no need to address any issue concerning the unjust enrichment claim.  As intervenors themselves put it, "principles of convenience, judicial economy and avoiding unnecessary burdens on the resources of the parties" supported bifurcation and the deferral of all litigation relating to the unjust enrichment claim.  ECF No. 142 at 2.

Second, the jurisdictional issues raised are complex, have already been litigated once in this case, and there is no reason to relitigate them again now.  Briefly, Defendant-Intervenors all are other U.S. domestic producers of preserved mushrooms.  Since 2001, they have received every year CDSOA distributions under the preserved mushroom antidumping duty orders at issue here.  In some years, CBP has withheld Giorgio's contested share from distribution.  In other year's, CBP has paid out Giorgio's contested share to other domestic producers of preserved mushrooms, including Defendant-Intervenors.  Complaint ¶¶ 85, 88.  As recited above, Defendant-Intervenors all noted in seeking to intervene that this case would adjudicate Giorgio's rights to monies they already had received, or might otherwise receive, and thus intervention was necessary to afford them the ability to protect their interests.[15]

After intervention was permitted over Giorgio's objection, Giorgio amended its Complaint to add restitution/unjust enrichment claims against Defendant-Intervenors.  The reason was simple.  If this Court were to determine that Giorgio had been unlawfully deprived of its share of CDSOA distributions, and that share had in some years been paid to Defendant-Intervenors, Giorgio should be able to recover those funds.

---

[15] *See supra* p. 8-9.

The claim by a private party against a private party in the CIT admittedly raises complex jurisdictional issues involving not only the applicability to this Court of the federal supplemental jurisdiction statute relied upon by movants,[16] but also common law doctrines of ancillary, pendant, and pendant-party jurisdiction.  *See Thyssenkrupp Mexinox S.A. v. United States*, 616 F. Supp. 2d 1376, 1381-83 (CIT 2009); *Old Republic Ins. Co. v. United States*, 14 CIT 377, 382, 741 F. Supp. 1570, 1575 (1990).  The common law analysis is particularly complex because the case law requires examination of the relatedness of legal and factual issues between the original jurisdiction claim and the ancillary/pendant claim (and whether they comprise a single constitutional case or controversy) -- a subject of Giorgio's stayed discovery requests -- and vests discretion with the court in deciding to exercise such jurisdiction.  *See Thyssenkrupp*, 616 F. Supp. 2d at 1381-83; *Old Republic*, 14 CIT at 382, 741 F. Supp. at 1575.  And here you have the fundamental fairness issue of intervenors voluntarily bringing themselves to court to protect their interests with respect to certain money, only to contend that the Court should not adjudicate whether they are entitled to that very money.  (Apparently intervenors had in mind a proceeding that would adjudicate Giorgio's rights to those CDSOA distributions, but not their own rights, and thus a case which they could win but not lose.)  Indeed, the issue may also require reconsideration of the Court's order granting intervention.  Giorgio is unclear how intervention could have been justified if intervenors rights are not part of the same constitutional "case or controversy" as Giorgio's.

Be that as it may, the parties already litigated these issues six years ago, when the Court allowed intervention, Giorgio added the claim, and this court decided it could exercise jurisdiction.  *See Giorgio Foods, Inc. v. United States*, 31 CIT 1261, 1271, 515 F. Supp. 2d 1313,

---

[16] 28 U.S.C. § 1585.

1323 (2007).  Intervenors now contend that the year-old Federal Circuit Decision in *Sioux Honey*

requires reexamination of the jurisdictional issue.  But even if *Sioux Honey* is relevant, as it may

be on the statutory supplemental jurisdiction issue only,[17] movants provide no reason why the

jurisdiction question needs to be revisited now and not deferred as the bifurcation order requires.

It still remains the case that the Court may never need to reach the restitution/unjust enrichment

claim.  And there may be more relevant precedent established by the time the Court needs to do

so.

Accordingly, the Court should defer its consideration of jurisdictional issues concerning

Giorgio's restitution/unjust enrichment claim until after ruling on the merits of its primary claims

against the United States, as per the Court's existing procedural order.

## CONCLUSION

For the foregoing reasons, the Court should deny the various motions to dismiss.  In light

of the facts as alleged in its Second Amended Complaint, Giorgio has pled a viable as-applied

First Amendment claim, as the Federal Circuits analyses and rulings in both *SKF* and *Chez*

*Sidney* make clear.  It also has raised a viable as-applied Equal Protection Challenge, as there is

no rational basis for the ITC's classifications based exclusively on the abstract expression of

support.  Finally , this Court should defer ruling on the question of subject matter jurisdiction

over Giorgio's claim for restitution/unjust enrichment against Defendant-Intervenors, until after

---

[17] *Sioux Honey* involved a distinguishable set of facts because the private party defendants in that
case were not otherwise before the court, and the plaintiff had raised no claim otherwise within
the Court of International Trade's statutory original jurisdiction.  Here, in contrast, intevenors are
before the court, of their own volition.  Moreover, the Federal Circuit in *Sioux Honey* did not
address common law ancillary jurisdiction, which independently provides a basis for jurisdiction
over Giorgio's unjust enrichment claim over Defendant-Intervenors.

ruling on the merits of Giorgio's as-applied constitutional challenges, as per the terms of its preexisting procedural order.

Respectfully submitted,

/s/ Michael T. Shor
Michael T. Shor
Sarah Brackney Arni

ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, DC  20004-1206
(202) 942-5732
Fax: (202) 942-5999
Michael.Shor@aporter.com

*Counsel for Plaintiff Giorgio Foods, Inc.*

Dated:  March 1, 2013

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the word count limitation set forth in Chambers Procedure 2(B)(1), as it contains 10,447 words.

/s/ Michael T. Shor       
Michael T. Shor

*Counsel for Plaintiff Giorgio Foods, Inc.*

March 1, 2013