Slip Op. 13-29

# UNITED STATES COURT OF INTERNATIONAL TRADE

GIORGIO FOODS, INC.,

                    Plaintiff,

     v.

UNITED STATES and UNITED STATES
INTERNATIONAL TRADE
COMMISSION,

                    Defendants,

     and

L.K. BOWMAN COMPANY,
MONTEREY MUSHROOMS, INC., and
THE MUSHROOM COMPANY,

                    Defendant-intervenors.

Before: Timothy C. Stanceu, Judge

Court No. 03-00286

## OPINION

[Grating motions to dismiss pursuant to USCIT Rules 12(b)(1) and 12(b)(5)]

Dated: March 6, 2013

    *Michael T. Shor* and *Sarah Brackney Arni*, Arnold & Porter LLP, of Washington, DC, for plaintiff.

    *Courtney S. McNamara*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington DC, for defendant United States.  With her on the brief were *Stuart F. Delery*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White*, *Jr.*, Assistant Director.

    *Neal J. Reynolds*, Assistant General Counsel for Litigation, and *Patrick V. Gallagher*, *Jr.*, Attorney Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington DC, for defendant U.S. International Trade Commission.

*Valerie A. Slater*, Akin, Gump, Strauss, Hauer & Feld, LLP, of Washington, DC, for defendant-intervenors L.K. Bowman Company and The Mushroom Company.  With her on the brief were *W. Randolph Teslik* and *Troy D. Cahill.*

*Michael J. Coursey* and *R. Alan Luberda*, Kelley Drye & Warren, LLP, of Washington, DC, for defendant-intervenor Monterey Mushrooms, Inc.

Stanceu, Judge: This case arose from decisions of two agencies, the U.S. International Trade Commission (the "ITC" or the "Commission") and U.S. Customs and Border Protection ("Customs"), denying plaintiff monetary benefits under the now-repealed Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment"), 19 U.S.C. § 1675c (2000).[1] The ITC determined that Giorgio Foods, Inc. ("Giorgio"), a domestic producer of preserved mushrooms, did not qualify for "affected domestic producer" ("ADP") status, which a domestic producer must obtain in order to receive CDSOA disbursements ("offsets") of collected antidumping duties from Customs.  Giorgio claims it is owed a share of the duties Customs collected under various antidumping duty orders on imports of certain preserved mushrooms from Chile, the People's Republic of China ("China"), Indonesia, and India and distributed to other domestic mushroom producers.[2]  Second Am. Compl. ¶ 17 (June 7, 2011), ECF No. 150-1.

---

[1] Pub.L. No. 106-387, §§ 1001-03, 114 Stat. 1549, 1549A-72-75, *repealed by* Deficit Reduction Act of 2005, Pub.L. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007).  Citations are to the codified version of the Continued Dumping and Subsidy Offset Act ("CDSOA"), 19 U.S.C. § 1675c (2000).  All other citations to the United States Code are to the 2006 edition.

[2] *See Notice of Antidumping Duty Order: Certain Preserved Mushrooms from Chile*, 63 Fed. Reg. 66,529 (Dec. 2, 1998); *Notice of Amendment of Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms from the People's Republic of China*, 64 Fed. Reg. 8,308 (Feb. 19, 1999); *Notice of Antidumping Duty Order: Certain Preserved Mushrooms from Indonesia*, 64 Fed. Reg. 8,310 (Feb. 19, 1999); *Notice of Amendment of Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms from India*, 64 Fed. Reg. 8,311 (Feb. 19, 1999).

The ITC construed the "petition support requirement" of the CDSOA, 19 U.S.C.

§ 1675c(b)(1)(A), (d)(1), under which CDSOA offsets are limited to petitioners and parties in

support of an antidumping or countervailing duty petition, so as to disqualify Giorgio from the

list of potential ADPs because Giorgio indicated to the ITC in questionnaire responses that it did

not support the petition that resulted in the antidumping duty orders. *Id*. ¶ 45. Because Giorgio

lacked ADP status, Customs made no CDSOA disbursements to Giorgio for Fiscal Years 2001

through 2010. *Id*. ¶¶ 10, 80-84, 87.

Plaintiff's second amended complaint brings as-applied constitutional challenges to the

CDSOA's petition support requirement that are grounded in the First Amendment and the Fifth

Amendment equal protection guarantee. *Id*. ¶¶ 89-98. Plaintiff also asserts "unjust enrichment"

claims against the defendant-intervenors opposing it in this action, L.K. Bowman Company, a

division of Hanover Foods Corporation ("L.K. Bowman"), Monterey Mushrooms, Inc.

("Monterey"), and The Mushroom Company ("Mushroom Co."), each of whom Giorgio alleges

to have received and retained, unjustly, Giorgio's share of CDSOA distributions. *Id*. ¶¶ 85, 108.

Before the court are several motions to dismiss. The court concludes that Giorgio's

constitutional claims must be dismissed for failure to state a claim upon which relief can be

granted and that it lacks subject matter jurisdiction over Giorgio's unjust enrichment claims. The

court will enter judgment dismissing this action.

## I. BACKGROUND[3]

On January 6, 1998, an antidumping duty petition filed with Commerce and the ITC

sought the imposition of antidumping duties on preserved mushrooms from Chile, China,

---

[3] The facts as stated herein are as pled in the Second Amended Complaint.

Indonesia, and India.  Second Am. Compl. ¶ 26.  Beginning that year, the ITC conducted

investigations to determine whether imports of certain preserved mushrooms from Chile, China,

Indonesia, and India were causing or threatening to cause material injury to a domestic industry.

*Id*. ¶ 27 (citing *Initiation of Antidumping Investigations: Certain Preserved Mushrooms from*

*Chile, India, Indonesia, and the People's Republic of China*, 63 Fed. Reg. 5,360 (Feb. 2, 1998)).

In conducting those investigations, the ITC sent questionnaires to domestic producers of

preserved mushrooms, including Giorgio.  *Id*. ¶¶ 9, 45.  In its responses to the Commission's

questionnaires for the preliminary, as well as the final, phase of the investigations, "Giorgio

wrote that it (1) took no position with respect to the petition filed against preserved mushrooms

from Chile, China, and Indonesia, and (2) opposed the petition with respect to India."  *Id*. ¶ 45.

 Based on an affirmative ITC injury determination and its own affirmative finding of sales

at less than fair value, the International Trade Administration, U.S. Department of Commerce

("Commerce" or the "Department") issued an antidumping duty order on certain preserved

mushrooms from Chile on December 2, 1998.  *Id*. ¶¶ 8, 62; *see also Notice of Antidumping Duty*

*Order: Certain Preserved Mushrooms from Chile*, 63 Fed. Reg. 66,529 (Dec. 2, 1998).

Similarly, on February 19, 1999, Commerce issued antidumping duty orders on preserved

mushrooms from India, Indonesia, and China.  Second Am. Compl. ¶¶ 8, 62; *see also Notice of*

*Amendment of Final Determination of Sales at Less Than Fair Value and Antidumping Duty*

*Order: Certain Preserved Mushrooms from India*, 64 Fed. Reg. 8,311 (Feb. 19, 1999); *Notice of*

*Antidumping Duty Order: Certain Preserved Mushrooms from Indonesia*, 64 Fed. Reg. 8,310

(Feb. 19, 1999); *Notice of Amendment of Final Determination of Sales at Less Than Fair Value*

*and Antidumping Duty Order: Certain Preserved Mushrooms from the People's Republic of*

*China*, 64 Fed. Reg. 8,308 (Feb. 19, 1999).

The CDSOA was enacted on October 28, 2000.  19 U.S.C. § 1675c.  Concluding that

Giorgio had not supported a petition resulting in any of the four mushroom antidumping orders

so as to qualify Giorgio for CDSOA offsets, the ITC did not include Giorgio on its published

lists of ADPs for the mushroom antidumping duty orders for Fiscal Years 2001 through 2010.[4]

Second Am. Compl. ¶ 10.  The ITC subsequently denied Giorgio's written requests for ADP

status.  *Id.* ¶¶ 71-73.  Giorgio filed CDSOA certifications with Customs for various fiscal years

to request CDSOA disbursements, but Customs made no disbursements to Giorgio.[5]  *Id.*

¶¶ 67, 78.  In contrast, the ITC included the defendant-intervenors on its ADP lists, under the

four mushroom antidumping orders, for all fiscal years since the CDSOA was enacted, and

Customs has distributed CDSOA offsets to the defendant-intervenors in every fiscal year.  *Id.*

¶ 11.

---

[4] *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 40,782, 40,797 (Aug. 3, 2001); *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 67 Fed. Reg. 44,722, 44,735-36 (July 3, 2002); *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 68 Fed. Reg. 41,597, 41,630-31 (July 14, 2003); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 69 Fed. Reg. 31,162, 31,193-94 (June 2, 2004); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 70 Fed. Reg. 31,566, 32,156-57 (June 1, 2005); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 71 Fed. Reg. 31,336, 31,351, 31,366, 31,369, 31,372 (June 1, 2006); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 72 Fed. Reg. 29,582, 29,597, 29,612, 29,615, 29,619 (May 29, 2007); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 73 Fed. Reg. 31,196, 31,211, 31,226-27, 31,230, 31,233 (May 30, 2008); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 74 Fed. Reg. 25,814, 25,830, 25,846, 25,849, 25,852 (May 29, 2009); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 75 Fed. Reg. 30,530, 30,546, 30,562, 30,565, 30,568 (June 1, 2010).

[5] Plaintiff pleads that Giorgio Foods, Inc. ("Giorgio") did not file a certification for CDSOA benefits under the antidumping duty order for preserved mushrooms from India on account of futility, as the Commission's response to Giorgio's certifications for the three other antidumping duty orders had stated that it was "inappropriate" to add Giorgio to the list of ADPs because of Giorgio's questionnaire responses in the original investigations.  Second Am. Compl. ¶¶ 70-73 (June 7, 2011), ECF No. 150.

Giorgio commenced this action on May 23, 2003.  Summons, ECF No. 1; Compl., ECF

No. 4.  This case was stayed on October 10, 2003 pending resolution of cross-motions for

judgment upon the agency record in another case involving a constitutional challenge to the

CDSOA, *PS Chez Sidney, L.L.C. v. U.S. Intern. Trade Com'n*, Court No. 02-00635.  Order,

ECF No. 27.  The decision in that case, *PS Chez Sidney*, 30 CIT 858, 442 F. Supp. 2d 1329

(2006) ("*Chez Sidney I*"), rejected a statutory CDSOA claim but held the CDSOA petition

support requirement violative of the First Amendment, *id*. at 1331-33.

After the lifting of the stay, plaintiff moved on July 28, 2006 for a temporary restraining

order and a preliminary injunction, seeking to prevent further CDSOA distributions to the

recognized ADPs for the mushroom antidumping duty orders.[6]  Giorgio Foods Inc.'s Mot. for a

TRO & for a Prelim. Inj., ECF No. 30.  This Court denied the motion for a temporary restraining

order on August 2, 2006, Order, ECF No. 32, and on August 9, 2006, plaintiff filed a second

motion for a preliminary injunction, Giorgio Foods Inc.'s Mot. for a Prelim. Inj., ECF No. 34.

On August 23, 2006, L.K. Bowman, Monterey, Mushroom Canning, and Sunny Dell Foods, Inc.

("Sunny Dell"), parties that were petitioners in the antidumping duty investigations, Second Am.

Compl. ¶ 27, moved to intervene in this action, Mot. to Intervene as of Right, ECF No. 39.  The

court granted the intervention motion with respect to all movants except for Sunny Dell, which

declined to produce a witness requested by plaintiff for questioning at the preliminary injunction

---

[6] As a result of the commencement of this action and plaintiff's moving on August 9, 2006 for a preliminary injunction, U.S. Customs & Border Protection ("Customs"), pending resolution of this action, provisionally treated Giorgio as an affected domestic producer for Fiscal Years 2006 through 2009 and withheld Giorgio's claimed share from distribution to recognized ADPs.  Second Am. Compl. ¶ 87.  Customs did not withhold any CDSOA funds for Giorgio for Fiscal Year 2010.  *Id*. ¶ 88.

hearing.  Order 2 (Sept. 13, 2006), ECF No. 51.  On September 22, 2006, this Court denied the

motion for a preliminary injunction.  Order Denying Pl.'s Mot. for Prelim. Inj., ECF No. 58.

On October 12, 2006, plaintiff moved for leave to amend its complaint.  Giorgio Foods,

Inc.'s Mot. for Leave to Amend the Compl., ECF No. 59.  Plaintiff sought to abandon a statutory

claim it had brought against the ITC, to add facial and as-applied challenges to the petition

support requirement under the Fifth Amendment equal protection guarantee, and to add claims

for unjust enrichment against the defendant-intervenors.  Mem. of Law in Supp. of Pl.'s Mot. for

Leave to Amend the Compl. 1-2, ECF No. 59.  Plaintiff also sought to "update" its claims, to add

"factual allegations" to account for developments since the case was filed and stayed in 2003,

and to clarify its requested relief, which plaintiff specified as CDSOA distributions for fiscal

years 2001 through 2005.  *Id.*; First Am. Compl. ¶¶ 64, 69 (Oct. 12, 2006), ECF 59-2.  On

August 21, 2007, the court granted plaintiff's motion with respect to the aforementioned

amendments.[7]  *Giorgio Foods, Inc. v. United States*, 31 CIT 1261, 1262, 515 F. Supp. 2d 1313,

1316 (2007) ("*Giorgio I*").

On May 6, 2008, this Court stayed this action a second time pending appellate resolution

of the *Chez Sidney* litigation as well as another case that addressed constitutional issues

involving the CDSOA, *SKF USA Inc. v. United States*, Court No. 05-00542.  Order, ECF No. 84;

*SKF USA, Inc. v. United States*, 30 CIT 1433, 1446-47 451 F. Supp. 2d 1355, 1366-67 (2006)

("*SKF USA I*") (holding the petition support requirement of the CDSOA unconstitutional on

---

[7] Plaintiff's motion for leave to amend also sought to add Sunny Dell Foods, Inc.
("Sunny Dell") as a defendant.  Giorgio Foods, Inc.'s Mot. for Leave to Amend the Compl. 4
(Oct. 12, 2006), ECF No. 59.  The court denied this request, concluding that the addition would
unduly prejudice plaintiff, based on Sunny Dell's previous refusal to produce a witness in
response to plaintiff's request at the hearing on the motion for preliminary injunction.  *Giorgio
Foods, Inc. v. United States*, 31 CIT 1261, 1265-1267, 515 F. Supp. 2d 1313, 1318-20 (2007).

Fifth Amendment equal protection grounds).  On February 19, 2009, the Court of Appeals for the

Federal Circuit ("Court of Appeals") reversed *SKF USA I* and upheld the petition support

requirement under the First Amendment and the equal protection guarantee of the Fifth

Amendment.  *SKF USA, Inc. v. United States*, 556 F.3d 1337, 1360 (Fed. Cir. 2009) ("*SKF

USA II*").  On May 17, 2010, the United States Supreme Court denied a petition for a writ of

certiorari in *SKF USA II*.  *SKF USA, Inc. v. Customs and Border Protection*, 130 S.Ct. 3273

(2010).  On October 28, 2010, the Court of Appeals issued a non-precedential order in *PS Chez

Sidney*, stating that, following the denial of certiorari, *SKF USA II* is a final decision that "is

controlling with regard to all constitutional issues presented in [the] appeal," while limiting

briefing to the non-constitutional issues in that case.  *PS Chez Sidney, L.L.C. v. U.S. Intern.

Trade Com'n*, 409 F.App'x 327, 329 (Fed. Cir. 2010) ("*Chez Sidney II*").

After the lifting of the second stay, plaintiff moved on April 5, 2010 for leave to amend

its complaint a second time.  Giorgio Foods, Inc.'s Second Mot. for Leave to Amend the Compl.,

ECF No. 150.  Plaintiff sought to withdraw its facial First Amendment and equal protection

challenges to the CDSOA and replace them with claims that the CDSOA violates the First

Amendment and Fifth Amendment equal protection guarantee "as applied to Giorgio" for Fiscal

Years 2001 through 2010.  Mem. of Law in Supp. of Pl.'s Second Mot. for Leave to Amend the

Compl. 2-4, ECF No. 150 ("Pl.'s Mem. in Supp. of Second Mot. to Amend"); Second Am.

Compl. ¶¶ 90-91, 94-97.  Plaintiff also sought to reinstate its previously abandoned statutory

claim and, in the alternative, to add a claim alleging "substantive and procedural due process

violations, arising from the CDSOA's failure to afford Giorgio notice and an opportunity to

present evidence of actions Giorgio took in support of the petition."  Pl.'s Mem. in Supp. of

Second Mot. to Amend 3-4.  Finally, plaintiff sought to add a claim for money damages against

the United States.  *Id*. at 3-4, 12.  On November 17, 2011, this Court granted plaintiff's request to

abandon the facial constitutional claims, *Giorgio Foods, Inc. v. United States*, 35 CIT __, __,

804 F. Supp. 2d 1315, 1320-21 (2011) ("*Giorgio II*"), but denied plaintiff's requests to add a

statutory claim, due process claims, and a claim for money damages, *id*. 35 CIT at __, 804 F.

Supp. 2d at 1321-25.

On July 13, 2012, the Court of Appeals issued its decision in *PS Chez Sidney, L.L.C. v.*

*U.S. Intern. Trade Com'n*, 684 F.3d 1374 (Fed. Cir. 2012) ("*Chez Sidney III*").  On October 16,

2012, defendant and defendant-intervenors filed their motions to dismiss.  On January 30, 2013,

the court denied a motion by plaintiff to stay this action pending the outcome of two appeals of

CDSOA-related decisions arising from an antidumping duty order on Chinese wooden bedroom

furniture that were, and continue to be, pending before the Court of Appeals.  G*iorgio Foods v.*

*United States*, 37 CIT __, __, Slip Op. 13-14, at 5 ("*Giorgio III*").  On March 1, 2013, plaintiff

filed its response to the motions to dismiss.  Pl.'s Opp'n to Defs.' and Def.-Intervenors' Mots. to

Dismiss, ECF No. 200 ("Pl.'s Opp'n").

## II. Discussion

Before the court are the motions to dismiss the second amended complaint, as filed on

October 16, 2012 by defendant United States, defendant ITC, and defendant-intervenors.[8]  The

---

[8] Defendant U.S. International Trade Commission ("ITC") moved to dismiss under Rule 12(b)(5).  Def. U.S. Int'l Trade Comm'n's Mot. to Dismiss Pursuant to R. 12(b)(5), ECF No. 179 ("ITC's Mot.").  The United States and defendant-intervenors moved to dismiss under Rules 12(b)(1) and 12(b)(5).  Def.'s Mot. to Dismiss for Failure to State a Claim upon which Relief Can Be Granted and Mot. to Dismiss for Lack of J. ("Def.'s Mot."), ECF No. 180; Mot. by Def.-Intervenors L.K. Bowman Co. and The Mushroom Co. (Formerly Mushroom Canning Co.) to Dismiss the Second Am. Compl., ECF No. 181 ("L.K. Bowman & Mushroom Co.'s Mot."); Def.-Intervenor Monterey Mushrooms, Inc.'s Mot. to Dismiss Pl.'s Second Am. Compl. Pursuant to Rs. 12(b)(1) and 12(b)(5), ECF No. 182 ("Monterey's Mot.").  Earlier (in 2003), a motion to dismiss a count in the original complaint pursuant to USCIT Rule 12(b)(5) was filed (continued…)

claims remaining in that complaint following the decision of this Court in *Giorgio II*, 35 CIT

at __, 804 F. Supp. 2d at 1320-21, are constitutional challenges to the CDSOA, brought against

defendants ITC and the United States, and claims of unjust enrichment, brought against the

defendant-intervenors.[9]  Specifically, plaintiff challenges the petition support requirement of the

CDSOA, as applied to Giorgio, on First Amendment grounds.  Second Amended Compl.

¶¶ 89-92.  Further, it challenges the petition support requirement, as applied to Giorgio, on Fifth

Amendment equal protection grounds.  *Id.* ¶¶ 93-98.  Finally, invoking supplemental jurisdiction,

*id.* ¶ 21, plaintiff claims that the defendant-intervenors have been unjustly enriched at the

expense of Giorgio, having received and retained Giorgio's lawful share of CDSOA distributions

for certain fiscal years, and seeks restitution, through direct recovery of those distributions, from

each of the defendant-intervenors, *id.* ¶¶ 107-108, 109(e).

    The court exercises subject matter jurisdiction over plaintiff's constitutional challenges to

the CDSOA according to section 201 of the Customs Courts Act of 1980 (2006), 28 U.S.C.

§ 1581(i)(4), which provides the Court of International Trade jurisdiction of civil actions arising

out of any law of the United States, such as the CDSOA, providing for administration with

respect to duties (including antidumping duties) on the importation of merchandise for reasons

other than the raising of revenue.  The CDSOA, out of which the constitutional claims arise, is

such a law.  *See Furniture Brands Int'l v. United States*, 35 CIT ___, ___, 807 F. Supp. 2d 1301,

_____

(continued…)
by the ITC.  Mot. of Def. U.S. Int'l Trade Comm'n to Dismiss Claim 1 of the Compl. (Aug. 25,
2003), ECF No. 18.  Because this motion was limited to the statutory claim in plaintiff's original
complaint, it became moot when plaintiff abandoned that claim in its first amended complaint.

    [9] In accordance with this Court's Order dated April 22, 2011, ECF No. 143, which
granted a Consent Motion for Bifurcation, the court adjudicates plaintiff's constitutional claims
prior to adjudicating any other issues, including remedy issues and plaintiff's claims for unjust
enrichment and restitution.

1307-10 (2011).  The court concludes it lacks subject matter jurisdiction over plaintiff's claims

of unjust enrichment.  This issue is addressed in Part II(B) of this Opinion.

A.  No Relief Is Available on Plaintiff's As-Applied Constitutional Challenges to the CDSOA

In deciding USCIT Rule 12(b)(5) motions to dismiss for failure to state a claim upon

which relief can granted, "the court must accept as true the complaint's undisputed factual

allegations and should construe them in a light most favorable to the plaintiff."  *Cambridge v.*

*United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citations omitted).  However, plaintiff's

complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a

plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on

its judicial experience and common sense."  *Id.* at 679.

The CDSOA amended the Tariff Act of 1930 ("Tariff Act") to provide for the

distribution of antidumping and countervailing duties to persons with ADP status, which is

limited to petitioners, and interested parties in support of petitions, with respect to which

antidumping duty and countervailing duty orders are entered.[10]  19 U.S.C. § 1675c(a), (d).[11]

---

[10] The CDSOA provided that:
The term "affected domestic producer" means any manufacturer, producer, farmer,
rancher or worker representative (including associations of such persons) that–
(A) was a petitioner *or interested party in support of the petition* with respect to
which an antidumping duty order, a finding under the Antidumping Act of 1921, or a
countervailing duty order has been entered, and
(B) remains in operation.
19 U.S.C. § 1675c(b)(1) (emphasis added).

[11] Congress repealed the CDSOA in 2006, but the repealing legislation provided that
"[a]ll duties on entries of goods made and filed before October 1, 2007, that would [but for the
legislation repealing the CDSOA], be distributed under [the CDSOA] . . . shall be distributed as
(continued…)

The statute directed the ITC to forward to Customs "within sixty days after the effective date of

this section [19 U.S.C. § 1675c] in the case of orders . . . in effect on January 1, 1999, or

thereafter . . . a list of petitioners and persons with respect to each order and finding and a list of

persons that indicate support of the petition by letter or through questionnaire response." *Id.*

§ 1675c(d)(1).  The CDSOA directed that Customs publish in the Federal Register, prior to each

distribution, lists of ADPs potentially eligible for distributions of a "continuing dumping and

subsidy offset" based on the lists obtained from the Commission and that Customs request that

potentially eligible parties certify eligibility for such an offset. *Id.* § 1675c(d)(2).  The CDSOA

also directed Customs to segregate antidumping and countervailing duties according to the

relevant antidumping or countervailing duty order, to maintain these duties in special accounts,

and to distribute to companies determined to be ADPs annually, as reimbursement for incurred

qualifying expenditures, a ratable share of the funds (including all interest earned) from duties

assessed on a specific unfairly traded product that were received in the preceding fiscal year. *Id.*

§ 1675c(d)(3), (e).

    The Second Amended Complaint states that "[a]s applied to Giorgio . . . the CDSOA's

petition support requirement violates the free speech clause of the First Amendment of the

United States Constitution."  Second Am. Compl. ¶ 90.  Plaintiff alleges that "[a]s a result of the

---

(continued…)

if [the CDSOA] . . . had not been repealed . . . . "  Deficit Reduction Act of 2005, Pub.L.
No. 109-171, § 7601(b), 120 Stat. 4, 154 (2006).  In 2010, Congress further limited CDSOA
distributions by prohibiting payments with respect to entries of goods that as of December 8,
2010 were "(1) unliquidated; and (2)(A) not in litigation; or (B) not under an order of liquidation
from the Department of Commerce."  Claims Resolution Act of 2010, Pub.L. No. 111-291,
§ 822, 124 Stat. 3064, 3163 (2010).

unconstitutional application of the petition support requirement, Giorgio has unlawfully been . . .

denied CDSOA offsets . . . for fiscal years 2001-2010 . . . ."  *Id.* ¶ 91.

Plaintiff alleges, further, that "[a]s applied to Giorgio . . . the CDSOA's petition support

requirement violates the Equal Protection guarantee of the U.S. Constitution."  *Id.* ¶ 94.  The

complaint states that the CDSOA's speech-based eligibility criterion "creates a classification that

implicates the exercise of constitutional free speech rights . . . that is not narrowly tailored to

achieve a compelling government objective."  *Id.* ¶ 95.  Plaintiff also claims that the petition

support requirement "discriminates without a rational basis between Giorgio . . . and other

domestic producers . . . , including the Defendant-Intervenors."  *Id.* ¶ 96.  Plaintiff alleges that

because of the equal protection violation, "Giorgio has unlawfully been . . . denied [CDSOA

offsets] . . . for fiscal years 2001-2010 . . . ."  *Id.* ¶ 97.

Both of plaintiff's constitutional claims are foreclosed by the holding of *SKF USA II*,

which upheld the petition support requirement of the CDSOA on both First Amendment and

equal protection grounds.  The Court of Appeals stated that "the Byrd Amendment is within the

constitutional power of Congress to enact, furthers the government's substantial interest in

enforcing the trade laws, and is not overly broad.  We hold that the Byrd Amendment is valid

under the First Amendment."  *SKF USA II*, 556 F.3d at 1360.  The Court of Appeals further held

that "[b]ecause it serves a substantial government interest, the Byrd Amendment is also clearly

not violative of equal protection under the rational basis standard."  *Id.*

Although stating that its challenges are "as applied to Giorgio," Second Am. Compl.

¶¶ 90, 94, plaintiff does not plead facts distinguishing Giorgio's constitutional challenges from

the challenges asserted, and rejected by the Court of Appeals, in *SKF USA II*.  Plaintiff alleges

various facts that it characterizes as demonstrating that it is in support of an antidumping duty

petition, including "providing all requested factual information" in its questionnaire responses to

the ITC.  Pl.'s Opp'n 1, 3 (citing Second Am. Compl. ¶ 45).  The controlling fact, however, is

plaintiff's admission in the complaint that, in both the preliminary and final phases of the

Commission's investigation, "in response to one question on each questionnaire asking whether

it supported the petition against each country, Giorgio wrote that it (1) took no position with

respect to the petition filed against preserved mushrooms from Chile, China, and Indonesia, and

(2) opposed the petition with respect to India."  Second Am. Compl. ¶ 45.  SKF USA, Inc.

("SKF"), the plaintiff in *SKF USA II*, challenged the petition support requirement on grounds

indistinguishable from those asserted here.  SKF did not express support for the petition involved

in that case.  *SKF USA II*, 556 F.3d at 1343.

       In opposing dismissal, plaintiff attempts to distinguish its case from *SKF USA II*, arguing

that SKF had actively opposed the petition while Giorgio actively "supported" the petition by

responding completely to the ITC's questionnaires and performing numerous other actions

before and during the ITC's investigation.  Pl.'s Opp'n 1-2 (citing Second Am. Compl. ¶¶ 29,

32-44).  Plaintiff submits that as-applied constitutional challenges are inherently fact-based, *id*.

at 14, and emphasizes that "Giorgio took no *actions* (as distinguished from its abstract

expression of viewpoint in response to the petition support question) to oppose the petitions or

Petitioners' trade enforcement efforts at any time in the Commission's investigation," *id*. at 1,

3-4 (citing Second Am. Compl. ¶ 54) (footnote omitted).

       The court rejects plaintiff's argument.  A party in the position of SKF and Giorgio, *i.e.*, a

party without petitioner status in an antidumping duty investigation brought under the Tariff Act

of 1930, can satisfy the petition support requirement of the CDSOA only if that party

"indicate[s]" to the Commission "support of the petition by letter or *through questionnaire*

*response*." 19 U.S.C. § 1675c(d)(1) (emphasis added).  From the facts set forth in the Second

Amended Complaint, it is clear that Giorgio, like SKF, failed to do so.  The fact that Giorgio, as

to three of the four countries named in the petition, did not take a position in opposition to the

petition is not a meaningful distinction in light of the holding in *SKF USA II*.

 Nothing in the *SKF USA II* opinion supports the notion that the Court of Appeals upheld

the petition support requirement only partially or upheld the petition support requirement in

some form other than as set forth in the CDSOA.  Although SKF undertook various actions to

"actively oppose" the petition, *id*. at 1358-59, whereas Giorgio opposed the petition only as to

one country, this distinction is not meaningful because the petition support requirement draws no

distinction between opposing a petition and declining to support a petition.  *See* 19 U.S.C.

§ 1675c(b)(1)(A), (d)(1).  Nor is the holding in *SKF USA II* based on any such distinction.  As

the Court of Appeals stated, "[a]t best, the role of parties opposing (or not supporting) the

petition in responding to questionnaires is similar to the role of opposing or neutral parties in

litigation who must reluctantly respond to interrogatories or other discovery."  *SKF USA II*,

556 F.3d at 1359.  The Court of Appeals explained that because "the purpose of the Byrd

Amendment's limitation of eligible recipients was to reward injured parties who assisted

government enforcement of the antidumping laws by initiating or supporting antidumping

proceedings," *id.* at 1352, it was "rational for Congress to conclude that *those who did not*

*support the petition should not be rewarded*," *id*. at 1360 (emphasis added).

 Next, plaintiff argues that in *SKF USA II*, the Court of Appeals "adopted a limiting

construction of the [CDSOA]" and in so doing established a new test for eligibility based on a

company's actions during the investigation, including its litigation support actions, rather than

the particular viewpoint expressed in questionnaire responses.  Pl.'s Opp'n 18, 20 (citing *SKF*

*USA II*, 556 F.3d at 1353).  Accordingly, as plaintiff submits, "the ITC failed to consider [Giorgio's] actions and failed to make any factual findings concerning [the] *actions* it took in support or in opposition to the petition."  *Id.* at 21 (citation omitted).  Plaintiff misinterprets the holding of *SKF USA II*.  The statements in the opinion alluding to a "limiting construction" that "rewards actions (litigation support) rather than the expression of particular views," were made in the context of a theoretical construction of statutory language as an alternative to the Court's previous discussion of congressional purpose and as part of the larger analysis by which the Court subjected the CDSOA to First Amendment standards for the regulation of commercial speech.  *See SKF USA II*, 556 F.3d at 1353 ("Finally, if we *were* to view this case as involving the construction of statutory language rather than an exercise in ascertaining statutory purpose, the result would be the same.") (emphasis added).[12]  Contrary to plaintiff's view, *SKF USA II* did not establish a new test for ADP eligibility in order to conform the statute to the First Amendment.  Instead, the Court upheld, in the face of constitutional challenges, the test for ADP eligibility that Congress enacted.  Like the plaintiff in *SKF USA II*, Giorgio did not meet that test.

        In support of its as-applied challenges, plaintiff also cites the recent decision of the Court of Appeals in *Chez Sidney III*.  Plaintiff considers *Chez Sidney III* to be controlling in this action and submits that the Court of Appeals, "[b]uilding on its First Amendment analysis in *SKF [USA II]* . . . ruled [] that CDSOA benefits could neither be granted *nor denied* to a claimant solely based on an abstract expression of viewpoint."  Pl.'s Opp'n 23.  Thus, "*Chez Sidney [III]*

_____

        [12] The court notes, further, that "as applied" First Amendment challenges in the commercial speech context are generally disfavored.  *See United States v. Edge Broadcasting Co.*, 509 U.S. 418, 430-31 (1993) ("[We] judge the validity of the restriction in this case by the relation it bears to the general problem . . . not by the extent to which it furthers the Government's interest in an individual case.").

[] reiterates that . . . 'it is the surrounding circumstances, not abstract statements of support alone,

upon which an appropriate support determination depends.'" *Id*. (citing *Chez Sidney III*,

684 F.3d at 1382-83).[13]  Plaintiff argues, further, that "the analysis and holding of *Chez Sidney*

*[III]* cannot be ignored simply because Chez Sidney asserted a statutory claim, rather than a

constitutional claim" because "[t]here is little practical difference . . . between a claim that the

ITC interpreted the [CDSOA] incorrectly as a matter of statutory construction and a claim that

the ITC's construction of the [CDSOA] as applied to Giorgio was unconstitutional." *Id*. at 27.

　　　*Chez Sidney III* is not controlling of the outcome of this case.  That decision did not

overturn the decision in *SKF USA II*.  Nor did it rule on any issue concerning the

constitutionality of the petition support requirement.  As the Court of Appeals made clear, the

constitutional issues presented in *Chez Sidney III* were definitively resolved by *SKF USA II*,

*Chez Sidney III*, 684 F.3d at 1379 n.3, and the decision rendered therein is strictly limited to a

statutory challenge, *id*. at 1378-79.  No such statutory challenge is found in Giorgio's second

amended complaint.  *See Giorgio II*, 35 CIT at __, 804 F. Supp. 2d at 1321-22.  Plaintiff's

assertion that there is "little practical difference" between a constitutional and statutory challenge

to the CDSOA thus ignores the explicit pronouncement of the Court of Appeals concerning the

---

　　　[13] Plaintiff also argues that in *Chez Sidney III*, the Court of Appeals for the Federal
Circuit ("Court of Appeals") stated that the limiting construction "'effectively redefine[ed]
[affected domestic producers] from 'interested parties in support of a petition' to 'interested
parties in a petition.'"  Pl.'s Opp'n to Defs.' and Def.-Intervenors' Mots. to Dismiss 23 (Mar. 1,
2013), ECF No. 200 (citing *PS Chez Sidney, L.L.C. v. United States*, 684 F.3d 1374, 1380 (Fed.
Cir. 2012) ("*Chez Sidney III*")).  However, the Court of Appeals made this statement in reference
to this Court's decision in *SKF USA Inc. v. United States*, 30 CIT 1433, 1446, 451 F. Supp. 2d
1355, 1366 (2006), which was reversed by *SKF USA, Inc. v. United States*, 556 F.3d 1337, 1360
(Fed. Cir. 2009) ("*SKF USA II*").  The court, therefore, dismisses this misguided argument.

scope of *Chez Sidney III*.  Neither the holding nor the analysis of *Chez Sidney III* makes viable

Giorgio's as-applied constitutional challenges to the CDSOA.

In summary, plaintiff has failed to allege facts sufficient to demonstrate that its

constitutional claims are not foreclosed by the binding precedent of *SKF USA III*.  As to these

claims, therefore, the second amended complaint does not "contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 662

(citation omitted).  The court must dismiss these claims pursuant to USCIT Rule 12(b)(5).

B.  The Court Lacks Subject Matter Jurisdiction over Plaintiff's Unjust Enrichment Claims

Subject matter jurisdiction is a threshold issue, *Steel Co. v. Citizens for Better

Environment*, 523 U.S. 83, 94-95 (1998), and plaintiff carries the burden of demonstrating that

its assertion of subject matter jurisdiction is proper, *McNutt v. General Motors Acceptance

Corp.*, 298 U.S. 178, 189 (1936).  In ruling on a motion to dismiss for lack of subject matter

jurisdiction, the "court must accept as true all undisputed facts asserted in the plaintiff's

complaint and draw all reasonable inferences in favor of the plaintiff."  *Trusted Integration, Inc.

v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citation omitted).

Plaintiff claims that the three defendant-intervenors have been "unjustly enriched at the

expense of Giorgio as a result of the unconstitutional petition support requirement."  Second Am.

Compl. ¶ 108.  According to plaintiff, "Defendant-Intervenors have received . . . more than their

appropriate *pro rata* share of CDSOA disbursements under the mushroom antidumping orders,

including the portions of such disbursements that rightfully belong to Giorgio."  *Id.* ¶ 18.  As a

remedy, plaintiff seeks "to disgorge and make full restitution to Giorgio of Giorgio's lawful

share of all CDSOA disbursements [defendant-intervenors] have received . . . ."  *Id.* ¶ 109(e).

Plaintiff submits that the court possesses subject matter jurisdiction over this claim because it "falls within the [court's] supplemental jurisdiction . . . [as it] stems from and is directly related to Giorgio's claims against Defendant the United States in connection with its administration and enforcement of the CDSOA, as to which this Court has original jurisdiction, such that they form part of the same case or controversy." *Id.* ¶ 21 (citations omitted). Plaintiff also submits that its unjust enrichment claims "raise[] complex jurisdictional issues involving not only the applicability of this Court of the federal supplemental jurisdiction statute . . . but also common law doctrines of ancillary, pendant, and pendant-party jurisdiction." Pl.'s Opp'n 32 (citing *Thyssenkrupp Mexinox S.A. v. United States*, 33 CIT __, __, 616 F. Supp. 2d 1376, 1381-83 (2009); *Old Republic Ins. Co. v. United States*, 14 CIT 377, 382, 741 F. Supp. 1570, 1575 (1990)).

The court rejects plaintiff's argument on subject matter jurisdiction. "Some statutory grant of authority is required" for this Court to entertain a direct claim by one private party against another, and this Court lacks statutory supplemental jurisdiction under 28 U.S.C. § 1367(a), which is limited to the district courts. *Sioux Honey Assoc. v. Hartford Fire Insurance Co.*, 672 F.3d 1041, 1051-56 (Fed. Cir. 2012), *cert. denied* 133 S.Ct. 126 (2012). Therefore, the court may not exercise jurisdiction over plaintiff's claims against the defendant-intervenors, and those claims must be dismissed according to USCIT Rule 12(b)(1).

### III. CONCLUSION

For the foregoing reasons, all of the claims in plaintiff's second amended complaint must be dismissed. Plaintiff's as-applied constitutional claims brought under the First Amendment and Fifth Amendment equal protection guarantee are precluded by binding precedent and must be dismissed for failure to state a claim upon which relief can be granted under USCIT

Rule 12(b)(5).  The court lacks subject matter jurisdiction over plaintiff's unjust enrichment

claims, which therefore must be dismissed pursuant to USCIT Rule 12(b)(1).  Plaintiff twice has

amended its complaint, and the court sees no justification for allowing plaintiff to seek leave for

further amendment.  Therefore, the court shall enter judgment dismissing this action.


<u>/s/ Timothy C. Stanceu</u>
Timothy C. Stanceu
Judge


Dated: March 6, 2013
        New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

**GIORGIO FOODS, INC.,**

               Plaintiff,

    v.

**UNITED STATES and UNITED STATES
INTERNATIONAL TRADE
COMMISSION,**

             Defendants,

    and

**L.K. BOWMAN COMPANY,
MONTEREY MUSHROOMS, INC., and
THE MUSHROOM COMPANY,**

           Defendant-intervenors.

**Before: Timothy C. Stanceu, Judge**

**Court No. 03-00286**

## <u>JUDGMENT</u>

Upon consideration of the Second Amended Complaint, the motion to dismiss for failure to state a claim upon which relief can be granted filed by defendant U.S. International Trade Commission, the motions to dismiss by for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction filed by defendant United States and defendant-intervenors L.K. Bowman Company, a division of Hanover Foods Corporation, Monterey Mushrooms, Inc., and The Mushroom Company, all other papers and proceedings herein, and in conformity with the court's Opinion issued this date, it is hereby

**ORDERED** that the motions to dismiss of defendants and defendant-intervenors be, and hereby are, granted; it is further

**Court No. 03-00286**

**Page 2**

     **ORDERED** that plaintiff's First Amendment and Fifth Amendment equal protection claims be, and hereby are, dismissed for failure to state a claim upon which relief can be granted; it is further

     **ORDERED** that plaintiff's claims for unjust enrichment and restitution, be, and hereby are, dismissed for lack of subject matter jurisdiction; and it is further

     **ORDERED** that this action be, and hereby is, dismissed.


                             /s/ Timothy C. Stanceu
                             Timothy C. Stanceu
                             Judge

Dated: March 6, 2013
       New York, New York